Pete TAPIA, No. 21097, Appellant,

v.

Felix RODRIGUEZ, Warden, Appellee.
No. 702–70.

United States Court of Appeals,
Tenth Circuit.

Aug. 16, 1971.

Burton L. Cawthorne, Denver, Colo.,
for appellant.

Joseph F. Baca, Sp. Asst. Atty. Gen., Albuquerque, N. M. (James A. Maloney, Atty. Gen., Santa Fe, N. M., with him on the brief), for appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This is an appeal from denial of habeas corpus relief wherein Pete Tapia, a prisoner of the State of New Mexico, seeks to collaterally attack his 1967 conviction, following trial by jury, for commission of the crime of armed robbery.

Tapia was found guilty of having robbed one Louis Quintana, an employee of Foodway Store, Albuquerque, at a liquor drive-in window section of the store at about 9:40 p. m. on the evening of April 28, 1967.

Quintana testified: Two men, each armed with guns, approached the well-lighted drive-in window; he was able only to identify Tapia, who was standing directly facing him holding a long barrel gun; Tapia was wearing a baseball cap pulled down over his head; Tapia bore a distinct scar below his mouth; Tapia said to him "Give me all the money or I will come in and get it."; he handed Tapia about $297.00 in bills; he watched the two men run toward Sunset Drive. The following day Quintana identified Tapia as one of the two gunmen from the police "mug book" containing some 350 photographs. About a week after the robbery, Quintana again identified Tapia from a police line-up. Quintana made an in-court identification of Tapia during trial.

Janice Morrison, then 19, testified that on the evening of the robbery she was horseback riding on a ditch bank within view of the Foodway Store. She saw three men running toward her. They came very close to her as she observed them. That same evening she was contacted by a policeman as she was viewing a fire in the area. She was asked by the policeman if she had seen three men in the area of the Foodway Store earlier that evening. She replied that she had seen three men there at about 9:30 p. m. or 10:00 p. m. Soon thereafter she looked through a "whole bunch" of pictures which she later estimated at about twenty at the Sheriff's office, from which she identified Tapia as one of the men she had seen that evening. She acknowledged that she had not noted the scar on Tapia's chin that evening. When asked whether there was any particular feature about the person which she identified from the photographs she responded that "he had a scar on his chin". On May 1 or 2, 1967, she attended a line-up involving about six men, including Tapia. She identified Tapia at the line-up as one of the three men she saw on the evening of April 28th. She, too, made an in-court identification of Tapia during trial.

Detective Torres testified that after the armed robbery incident he spoke with Quintana. He displayed the "mug book" to Quintana, containing about 350 photos of persons including that of Tapia. He testified that "the mug book is a large book containing photographs of suspects we have in Bernalillo County. This refers to burglary, armed robbery, narcotic addicts." No objection was made to this testimony. The trial court did not instruct the jury to disregard it.

Tapia testified that he had gone out with a friend, one Charles Romero, on the evening of April 28th, to do some nightclubbing. He stated that he and Romero arrived at the Bondsman Lounge at about 6:30 o'clock p. m. and remained there until about 11:00 o'clock p. m. Tapia testified that he had had the scar on his chin since childhood when he fell on a tin can. Tapia's testimony concerning the evening spent at the Bondsman Lounge was corroborated by Charles Romero.

Tapia called Eliseo Cuellar as an alibi witness. Cuellar worked during the evening of April 28th for the Duke City Merchant Police, stationed at the Bondsman Lounge. He testified that he had seen Tapia there before and that he saw him there on the evening of April 28th. Cuellar stated that he went on duty about 8:30 p. m. that evening and that he

recalled seeing Tapia at that time. He testified that Tapia remained in the Bondsman Lounge for about two or three hours. On cross-examination Cuellar testified that he saw Tapia at the Bondsman Lounge every Friday and Saturday evening. He stated that between April 28th and September 27th that he had no occasion to recollect Tapia's presence at the Lounge on the evening of April 28th. When asked on re-direct examination what called his attention to Tapia's presence in the Lounge on the evening of April 28th, Cuellar replied "I don't know. I figure wearing sunglasses, I figure he was a dope addict. That is what I notice wearing glasses." Cuellar stated that Tapia was the only person who wore dark sunglasses in the Bondsman Lounge. On re-cross-examination, Cuellar acknowledged that he may have been mistaken about seeing Tapia at the Bondsman Lounge on the evening of April 28th and that it may have been July 28th instead, and that it probably was the latter date. He had previously testified that he did not work at the Bondsman after April 28th. His wife, Emma Cuellar, testified that he worked at the Bondsman April 28th and 29th, that he worked there three days in June and six days in July, including July 28th. She said that a riot occurred at the Bondsman Lounge on the evening of July 28th when about twenty men attacked Cuellar. On re-direct, Cuellar said that a riot did occur at the bar on the evening of July 28th but that he could not remember whether Tapia was there that evening.

Delbert Manzanares testified that he was working at the Bondsman Lounge on the evening of April 28, 1967. He knew Pete Tapia previously and recalled serving him some drinks there that evening. He said that Tapia was in the Lounge between 7 o'clock p. m. and 11 o'clock p. m. He acknowledged that he had only recently been contacted to testify on behalf of Tapia and that he did not reflect on the evening of April 28th until then—a lapse of about four months. He said that Tapia came to the Lounge about every Friday and Saturday nights, but could not remember when Tapia was last there.

Tapia moved for a directed verdict which was denied. Following sentence he appealed to the Court of Appeals of New Mexico. There the Court found that the evidence was, viewed in the light most favorable to the prosecution, sufficient to support the jury verdict. With respect to the appellant's contentions concerning testimony and remarks about the police "mug book" the Court noted that Tapia's counsel neither objected nor moved to strike or suppress. The Court did not find reference to, and testimony concerning, the extra-judicial identification of Tapia from the "mug book" to constitute plain or fundamental error. The Court held that the fundamental error rule is to be applied only to prevent a miscarriage of justice and that it is not to be applied to excuse failure to make proper objections at trial. The Court affirmed. State v. Tapia, 79 N.M. 344, 443 P.2d 514 (1968). The same Court denied post-conviction relief. Tapia contended that his court appointed counsel was incompetent and inadequate in that (a) he failed to use compulsory process to subpoena a fourth alibi witness; (b) he failed to object to extra-judicial identification of Tapia by prosecuting witnesses; and (c) he failed to invoke the fundmental error rule during his trial. The Court held that none of the contentions amounted to a showing that Tapia's counsel rendered his trial a sham, farce or mockery. State v. Tapia, 80 N.M. 477, 457 P.2d 996 (1969).

■ An evidentiary hearing was held upon Tapia's petition for habeas corpus relief in the court below. He claimed denial of due process by reason of (a) his attorney's inadequacy to object to the "mug book" testimony; (b) the admission of the "mug book" testimony without objection; and (c) the detrimental effect of (a) and (b) in light of the fact they were not considered on direct appeal for failure to object. Tapia's trial counsel testified that he had been admitted to the New Mexico Bar only about

nine months prior to Tapia's trial; that he had not been trial counsel in a felony case before; that he had been assisted throughout trial by another lawyer who had practiced for a little over one year. He recalled that he did not object to the "mug book" testimony and that he did not move for mistrial. On October 19, 1970, the court below dismissed the habeas petition. The Court separately found that trial counsel did not object to the "mug book" trial testimony. The Court concluded that Tapia was represented by adequate and effective counsel and was not denied due process of law. This appeal followed.

We hold that the "mug book" testimony and remarks relative thereto, though improper, did not constitute plain or fundamental error within the purview of Rule 52(b), Fed.R.Crim.P. Such error has been by this court described as "serious prejudicial error" in the conduct of the trial affecting life or liberty requiring notice and corrective action by the appellate court, notwithstanding that it was not called to the attention of the trial court. Whaley v. United States, 394 F.2d 399 (10th Cir. 1968); Cleaver v. United States, 238 F.2d 766 (10th Cir. 1956). In Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the Supreme Court said that the test is whether the error did not influence the jury, or had but very slight effect. In determining whether the "plain error" rule should be invoked the appellate court must consider the whole record. Adams v. United States, 375 F. 2d 635 (10th Cir. 1967), cert. denied 389 U.S. 880, 88 S.Ct. 117, 19 L.Ed.2d 173 (1967).

This court follows the rule that when a defendant testifies in a criminal proceeding his credibility may be impeached by limited reference to prior convictions. United States v. Perea, 413 F. 2d 65 (10th Cir. 1969), cert. denied 397 U.S. 945, 90 S.Ct. 960, 25 L.Ed.2d 125 (1970); Butler v. United States, 408 F.2d 1103 (10th Cir. 1969). However, evidence or allegations of prior crimes are inadmissible to establish guilt or to show a propensity on the part of a defendant to commit the crime with which he is charged. Maestas v. United States, 341 F.2d 493 (10th Cir. 1965). Here there was no reference to a prior conviction attributed to Tapia. On cross-examination Tapia was not questioned with respect to any criminally "suspect" activities.

The prosecutor referred to the "mug book" once in his opening statement. He identified it simply as a book containing pictures of various people. Prosecuting witness Quintana testified only that he identified Tapia from a picture "out of the mug book". Witness Janice Morrison made no reference to the "mug book" during her testimony relative to identification from photographs. Detective Eugene Torres testified that he displayed the "mug book" to Quintana, consisting of about 350 photographs of "suspects" in Bernalillo County referring to "burglary, armed robbery, narcotic addicts". No objections were lodged to any of this testimony or statements made, nor were motions made to strike or for mistrial. The trial court took no independent action.

The appellant cites the case of United States ex rel. Durso v. Pate, 426 F.2d 1083 (7th Cir. 1970), cert. denied 400 U.S. 995, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971), for the rule that "mug book" testimony is of slight relevance when compared with its high potential for prejudicial effect upon the triers of fact. The Court there, however, found that the "mug book" testimony was relevant. In that case there was evidence that the defendant had previously been involved in the sale and use of narcotics. The principal charge was that of murder. The defendant contended that evidence of prior criminal acts not charged in the indictment was not admissible. But the Court held otherwise in light of their great probative value to show a single continuing series of related transactions culminated in the commission of the crime charged.

In United States v. Robinson, 406 F. 2d 64 (7th Cir. 1969), cert. denied 395

U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 243 (1969), the Court dealt with the prejudicial effect of various references during trial to identification of the defendant by use of "mug shots". The first reference was made by the prosecutor in his opening statement to the effect that identifying parties went to a police station where they looked at "mug shots" from which they identified the defendant. Objection was made thereto, sustained, and the Court instructed the jury to disregard. Later, at the trial, and during the Government's case in chief, prosecution witnesses testified that they had looked at either a "mug file", a "picture file", "photographs of suspects", or "photographs" at the police station. The Court distinguished this case from its holding in United States v. Reed, 376 F.2d 226 (7th Cir. 1967), where the specific reference there to the "mug shot" was identified as among those of former inmates of the State prison. The Court held that such testimony vitiated the defendant's right to be presumed innocent until proven guilty and was prejudicial error. In Robinson, *supra*, the Court did not find such error in view of the fact that the "mug shots" were identified as being at the police station, not at a penal institution. This fact, coupled with the trial court's instruction to the jury after the first defense objection, dissipated any innuendo which could have been drawn from the "mug shot" references.

■■ In the case at bar no objections were made and no specific instructions were given relating to the "mug book" testimony and remarks. Where no objection is made or exception taken to admission of evidence, the Court of Appeals will not reverse unless substantial justice requires. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Hall v. United States, 404 F.2d 1367 (10th Cir. 1969); Findley v. United States, 362 F.2d 921 (10th Cir. 1966). Errors which are prejudicial but which do not constitute plain error are generally cured by striking the testimony and

by admonishing the jury to disregard it. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); Lawrence v. United States, 357 F.2d 434 (10th Cir. 1966). Where the error does not amount to plain error—as in this case—there is every reason to believe that the jury abided the Court's instructions on the law relating to requisite proof of the elements of the crime charged, while affording Tapia those safeguards embodied in fundamentally basic instructions on presumption of innocence and the burden cast upon the Government to prove his guilt to the commission of the crime charged beyond a reasonable doubt. No attack is made here relating to the Court's instructions.

This Court has held that remarks by Government counsel in summation that " * * * we are not dealing with any amateurs" and "Even these defendants * * * are entitled to a fair trial" and "I opened my closing arguments by saying that we are not dealing with ordinary violators", while improper and prejudicial were not of a character to deprive the defendants of a fair trial. McManaman v. United States, 327 F.2d 21 (10th Cir. 1964). The improper remarks by the prosecutor in McManaman, *supra*, while certainly casting suspicion on the defendant's character and reputation, did not rise to that level of prejudice determined by this court to be plain error involving prosecution remarks relating to a defendant's failure to testify. United States v. Arnold, 425 F.2d 204 (10th Cir. 1970). The plain error rule was likewise applied when the prosecutor, in summation, remarked that the accused had associated with criminals "for the purpose of planning crimes" and that the accused is the "brains" of a "criminal organization". McBride v. United States, 409 F.2d 1046 (10th Cir. 1969), cert. dis. 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969). And where the prosecutor propounded questions to a dying co-conspirator, preserved by deposition relating to the defendant's prior convictions, this court held that the admission of such testimony, even lacking objection by de-

fense counsel, was plain error. Dillon v. United States, 391 F.2d 433 (10th Cir. 1968), cert. denied 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96 (1968). Where the prosecutor, on cross-examination, asked the defendant with respect to a conviction which was then pending on appeal, to which no answer ·was given and no defense action taken, such was harmless error. Drummond v. United States, 350 F.2d 983 (8th Cir. 1965), cert. denied 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966).

We hold that the testimony and remarks here involving reference to the "mug book" and the single reference thereto as containing photographs of "suspects" does not rise to that prejudicial height justifying reversal as plain error under Rule 52(b), Fed.R.Crim.P. Here the jury clearly understood that Tapia's defense was that of alibi—that when the armed robbery was committed at the Foodway Stores he was at the Bondsman Lounge and therefore could not have been the perpetrator. A careful review of the entire record does not justify invocation of the plain error rule. Adams v. United States, 375 F.2d 635 (10th Cir. 1967), cert. denied 389 U.S. 880, 88 S.Ct. 117, 19 L.Ed.2d 173 (1967), *supra*; Jennings v. United States, 364 F.2d 513 (10th Cir. 1966), cert. denied 385 U.S. 1030, 87 S.Ct. 760, 17 L.Ed.2d 677 (1967).

■ No contention is made here that the "mug book" displays for pretrial identification by Quintana or the displays exhibited to Morrison were unnecessarily suggestive and conducive to mis-identification. The record here indicates that the pretrial photographic identification procedure met all of the commands of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). No contentions are made against the subsequent independent line-up identifications by Quintana and Morrison. To corroborate the witness it is proper to prove that at time prior to trial, when suggestions of others have not intervened, that the witness recognized and identi-

fied the accused to be the person. Vol. IV, Wigmore on Evidence, § 1130, 3rd Ed. (1940); United States v. Forzano, 190 F.2d 687 (2d Cir. 1951); Annot., 71 A.L.R.2d 449, § 4(a) (1960). Such pretrial identification is admissible in that it is closer to the criminal act in point of time, thus affording less opportunity for the identifiers' impressions or recollections to fade.

In this case we note that following the Government's in-chief, during which the "mug book" references were made, Tapia's alibi witness, Eliseo Cuellar, when asked by Tapia's attorney what called his attention to Tapia's presence at the Bondsman Lounge on the evening of April 28th, responded that Tapia was wearing sunglasses. In conjunction with this observation Cuellar stated "I figure he was a dope addict." No motion was made by Tapia's attorney to strike. State v. Ward, 30 N.M. 111, 228 P. 180 (1924). Under the circumstances this is understandable. The jury heard the remarks. Upon motion, ruling and instruction, these comments would, of course, have been repeated. We further note that the prosecutor did not pursue these remarks on cross-examination.

We hold that the "mug book" testimony was not such, on the whole of the evidence, to have had more than slight effect. It is the exclusive function of the jury, not that of the appellate court, to determine the weight of the evidence and to assess the credibility of the witnesses. Lucas v. United States, 355 F. 2d 245 (10th Cir. 1966), cert. denied 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966).

The evidentiary hearing held by the court below was permitted to allow Tapia to establish, in accordance with 28 U.S.C. § 2254(d) that the presumption of correctness of the State Court judgment cannot stand. Our review of the entire record does not lead us to the conclusion that Tapia was denied due process of law in the State Court proceedings.

■■ Appellant specifically charges incompetency of his trial counsel in relation to his alleged denial of due process.

"The burden on appellant to establish his claim of ineffective assistance of counsel is heavy. Neither hindsight nor success is the measure for determining adequacy of legal representation." Ellis v. State of Oklahoma, 430 F.2d 1352 (10th Cir. 1970), cert. denied 401 U.S. 1010, 91 S. Ct. 1260, 28 L.Ed.2d 546 (1971). Nothing in this record supports Tapia's claim that his trial counsel's incompetency rendered his trial a sham and a mockery of justice which would shock the conscience of the court. We concur in the lower court's finding that Tapia's trial counsel was not incompetent. Ellis v. State of Oklahoma, *supra*; Nutt v. United States, 335 F.2d 817 (10th Cir. 1964), cert. denied 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed. 2d 180 (1964); Goforth v. United States, 314 F.2d 868 (10th Cir. 1963).

We affirm the lower court's denial of the habeas corpus application.