Riley I. GILLIHAN, Petitioner-Appellant,

v.

Felix RODRIGUEZ, Warden, New Mexico State Penitentiary, Respondent-Appellee.

No. 75–1514.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 24, 1976.

Decided Feb. 28, 1977.

David E. Booth, Asst. Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Andrea R. Buzzard, Asst. Atty. Gen., Santa Fe, N.M. (Toney Anaya, Atty. Gen., Santa Fe, N.M., on the brief), for respondent-appellee.

Before SETH and McWILLIAMS, Circuit Judges, and MORRIS, Chief Judge.*

MORRIS, Chief Judge.

This is an appeal from a denial of a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (1970). In September, 1968, Riley I. Gillihan was convicted by a jury in the District Court of Grant County, State of New Mexico, on each of four separate counts of murder in the first degree. Capital punishment was imposed on each conviction. On appeal, the Supreme Court of New Mexico issued a mandate on September 10, 1969, remanding for resentencing as provided in newly enacted New Mexico statutes limiting capital punishment.[1] On remand, the trial court resentenced the defendant to life imprisonment on each of the four separate convictions, and provided that the second, third and fourth convictions be served concurrently with each other but consecutively to the life sentence imposed upon the first conviction. The imposition of the consecutive sentences was affirmed by the New Mexico Supreme Court in *State v. Gillihan,* 81 N.M. 535, 469 P.2d 514 (1970).

Gillihan then filed a motion asserting three grounds for postconviction relief. The trial court denied the motion without a hearing, which denial was affirmed on appeal. *State v. Gillihan,* 85 N.M. 514, 514 P.2d 33 (1973). Thereafter, Gillihan sought postconviction relief on five different grounds. Again, the trial court's denial of relief without a hearing was affirmed on appeal. *State v. Gillihan,* 86 N.M. 439, 524 P.2d 1335 (1974).

---

* Of the United States District Court for the Eastern District of Oklahoma.

1. 1969 N.M.Laws, ch. 128, §§ 1–3, repealed by 1973 N.M.Laws, ch. 109, § 3. *See State v. Gillihan,* 81 N.M. 535, 469 P.2d 514 (1970).

Having exhausted his available state remedies, Gillihan petitioned the United States District Court for the District of New Mexico for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1970). After an evidentiary hearing, the district court denied the petition setting forth its reasons in a memorandum opinion. *Gillihan v. New Mexico,* No. 74–414 (D.N.M., May 14, 1975), Record, vol. 1, at 55, 60. This appeal followed.

Petitioner-Appellant asserts the following claims for relief:

1. Appellant was denied effective assistance of counsel at his state court trial.

2. Appellant was denied effective assistance of counsel on appeal from his state court conviction.

3. Appellant's conviction was rendered void by the imposition of the death penalty.

4. The submission to the jury of the death penalty as a possible verdict deprived appellant of due process of law.

5. The trial court's imposition of consecutive life sentences after the death sentences had been vacated constitutes enhancement of sentence in violation of the double jeopardy clause.

6. The trial court erred in giving certain instructions.

7. The trial court erred in allowing into evidence certain testimony of a pathologist.

I. *Appellant's Claim of Ineffective Assistance of Counsel at the State Court Trial.*

Appellant alleges that he was denied effective assistance of counsel at his state court trial in violation of the Sixth Amendment to the Constitution of the United States because his court-appointed lawyers (1) failed to seek a change of venue; (2)

failed to demand a full pretrial hearing outside the presence of the jury on the question of the validity of his confession; (3) failed to require the prosecutor to disclose to the defendant the existence of exculpatory material; (4) failed to object to the prosecution's characterization of appellant as a "mad dog" during closing argument; (5) withdrew appellant's plea of "not guilty" and substituted therefor a plea of "not guilty by reason of insanity" without appellant's consent; and (6) failed to insist upon the defense of diminished responsibility.

■ Appellant complains that his counsel failed to move for a change of venue in spite of the fact that the murders had received massive pretrial publicity in Grant County, thereby making it impossible for the appellant to receive a fair jury trial in that county at the time of the trial. Appellant claims that prior to trial he asked his counsel to make such a motion. Hilton A. Dickson, Jr. and J. W. Woodbury, appellant's court-appointed lawyers during the state court trial, both testified at the evidentiary hearing below that change of venue was discussed with the appellant, but they could not recall that the appellant ever requested a change of venue. Record, vol. VI, at 15, 39. Counsel further testified that both of them and appellant were in agreement that the publicity in the community was not of an unusual nature, Record, vol. VI, at 15–17, and that appellant could get a fair trial in Grant County. *Id.* at 39.[2] The district court found that appellant's allegation that he had asked his counsel prior to trial to request a change of venue was not credible, because, according to his own testimony, he did not become aware of any pretrial publicity until the prospective jurors were being questioned on voir dire.

2. On voir dire, both prosecution and defense counsel asked questions concerning pretrial publicity. While many of the prospective jurors had read newspaper accounts or heard radio reports about the slayings, they had not formed any opinion regarding appellant's guilt or innocence, Record, vol. II, at 141–44, vol. III, at 145, 164–66, 176, 191, 203, 208–09, 233–35, 250–51, 268–69, 277–78, 286–88, with the ex-

ception of two prospective jurors. Record, vol. III, at 223, 258. However, one of those two was excused from the jury, *id.* at 228, and the other juror stated, upon being questioned by both sides, that he would be able to set aside any tentative opinion and base his verdict solely on the evidence elicited during trial. *Id.* at 257–59, 262.

Record, vol. I, at 56. The district court's finding is amply supported by the record:

Q. [Mr. Roberts-Hohl] Now, why did you want a change of venue, Mr. Gillihan?

A. [Appellant] Silver City is a small town and there was a lot of publicity before this case.

Q. Do you have any—did you have access to newspapers at the time?

A. No, sir, not at the time.

Q. Well, how did you know there was publicity?

A. In listening to the prospective jurors at my trial.

Q. Is that the extent of your notion of the extensive pre-trial publicity?

A. Yes, sir, at that time.

Q. And you had no access to newspapers?

A. No, sir.

Record, vol. VI, at 5. *See id.* at 7–8.

■ Appellant next contends that his counsel should have demanded a full pre-trial hearing outside the presence of the jury for the purpose of challenging the validity of his confession. The record indicates, however, that a hearing was held outside the presence of the jury regarding the admissibility of appellant's confession. Record, vol. IV, at 343. During that hearing Mr. Woodbury zealously represented his client in repeatedly arguing to the court that the confession was involuntary and consequently inadmissible for the reason that appellant was incompetent to waive his constitutional rights. Record, vol. IV, at 348, 351, 392.

As a third ground in his attempt to show the ineffectiveness of his counsel appellant asserts that a request should have been made of the prosecution to disclose to the defendant the existence of exculpatory material pursuant to *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). At the evidentiary hearing in the federal district court appellant testified that prior to trial he learned from a police officer that casts of footprints were taken at the murder site which were of a different shoe size than appellant's. Appellant claims that he informed his counsel of this prior to trial. Record, vol. VI, at 6, 9.

Counsel testified that they had no knowledge of these footprints and could not recall any discussions with appellant concerning them prior to trial, but learned of their existence for the first time during trial. *Id.* at 18, 41–42. Defense counsel concluded and the district court found that the casts were not material to the defense since several people had been at the scene of the crime prior to the arrival of the law enforcement officers, *id.* at 19, and since appellant had admitted commission of the crime but was maintaining innocence by reason of insanity. Record, vol. I, at 56; *id.,* vol. VI, at 19, 41.

Appellant next complains about his counsel's failure to object when the prosecution during closing argument referred to appellant as a "mad dog." At the evidentiary hearing defense counsel explained that their decision not to object was based upon the following considerations: (1) The statement was not so inflammatory as to deprive appellant of a fair trial; Record, vol. VI, at 25, 37–38;[3] (2) there was no chance of obtaining a mistrial on the basis of the remark; *id.* at 43; (3) the phrase was consistent with the insanity defense; *id.* at 37; and (4) the expression was used to appellant's benefit during the closing argument for the defense. *Id.* at 44.[4]

---

**3.** In denying the appellant's request for post-conviction relief the Supreme Court of New Mexico stated:

> [I]t does not seem to us that the remark ["mad dog"] was such error as went to the basis of Gillihan's rights or to the foundation of the case or took from him a right which was essential to his defense. We doubt that the comment so aroused the passions of the jury as to preclude a fair and impartial verdict.

*State v. Gillihan,* 86 N.M. 439, 524 P.2d 1335, 1337 (1974).

**4.** In his closing argument to the jury Mr. Woodbury stated with respect to the prosecution's "mad dog" remark: "[B]ut beneficially for the people in this country, our courts and our fellow citizens do not treat human beings

■ Appellant's final two grounds urged in his attempt to show inadequacy of counsel concern his change of plea from "not guilty" to "not guilty by reason of insanity," and counsel's failure to insist upon the defense of diminished responsibility. Appellant alleges that he was not consulted and did not consent either to the change of plea or the waiving of the diminished responsibility defense. Record, vol. VI, at 6–7, 10; Appellant's Brief at 5. These allegations are refuted, however, by appellant's own testimony on cross-examination at the evidentiary hearing below:

Q. [Miss Buzzard] Did you know what an insanity defense was?

A. [Appellant] Yes, ma'am, that meant—I think I do. That I didn't know what I was doing at the time, or wasn't responsible for it.

Q. Is that what you wanted your defense to be?

A. I left it up to my attorneys. I didn't know what the defense should be.

Record, vol. VI, at 11. Furthermore, the testimony of his counsel contradicts appellant's allegations. They testified that appellant not only agreed to the change of plea after it had been discussed with him, but that he actually wanted to gamble for an acquittal by relying on an all or nothing defense based on insanity. His rejection of the diminished responsibility defense, which would have allowed the jury to consider a conviction for second degree murder, was based on his desire to avoid incarceration

for any length of time. Id. at 20, 33, 42, 43, 52. The district court reasoned that appellant must have understood that the reason for his examination by two psychiatrists was the insanity defense, and it found that the sole reliance on the insanity defense was not a unilateral decision on the part of counsel. Record, vol. I, at 57. The court thus resolved this factual question against the appellant, and its finding is fully supported by the record. See Record, vol. VI, at 11, 20, 33, 35, 42, 43, 52.[5]

■ " 'The burden on appellant to establish his claim of ineffective assistance of counsel is heavy. Neither hindsight nor success is the measure for determining adequacy of legal representation.' " *Tapia v. Rodriguez,* 446 F.2d 410, 416 (10th Cir. 1971), *quoting from Ellis v. Oklahoma,* 430 F.2d 1352, 1356 (10th Cir. 1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). *Accord, Lorraine v. United States,* 444 F.2d 1 (10th Cir. 1971) (per curiam). This circuit adheres to the well established principle that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. *Ellis v. Oklahoma,* 430 F.2d 1352, 1356 (10th Cir. 1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). *Accord, United States v. Coppola,*

as mad dogs. A dog is not a human being." Record, vol. V, at 633.

5. With respect to the diminished responsibility issue appellant assails the effectiveness of counsel on two grounds. Appellant complains on the one hand about counsel's failure to request a diminished responsibility instruction based on the mental disorder rule. *See State v. Padilla,* 66 N.M. 289, 347 P.2d 312, 315–16 (1959). On the other hand, appellant complains about the diminished responsibility instruction, requested by defense counsel and given by the court, Record, vol. II, at 49, 72, based on the intoxication rule, *see* 66 N.M. at 293–94, 347 P.2d at 315–16, as being inconsistent with the proclaimed all or nothing approach. Appellant's Brief at 5.

Even if the giving of the intoxication instruction was inconsistent with the all or nothing approach, "the instruction was a proper statement of the law, *State v. Padilla,* 66 N.M. 289, 347 P.2d 312 (1959), and did not prejudice the petitioner." *Gillihan v. New Mexico,* No. 74–414 (D.N.M., May 14, 1975), at 3, Record, vol. I, at 57. And, appellant cannot now complain about his counsel's failure to request a diminished responsibility instruction on the basis of the mental disorder rule, since, as the court below found, the sole reliance on the insanity defense was not a unilateral decision on the part of counsel, but it was the appellant who wanted to gamble for an acquittal. Record, vol. I, at 57.

486 F.2d 882, 887 (10th Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *Johnson v. United States,* 485 F.2d 240, 241–42 (10th Cir. 1973); *Tapia v. Rodriguez,* 446 F.2d 410, 416 (10th Cir. 1971); *United States v. Davis,* 436 F.2d 679, 681 (10th Cir. 1971); *Linebarger v. Oklahoma,* 404 F.2d 1092, 1095 (10th Cir. 1968), *cert. denied,* 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1969); *Goforth v. United States,* 314 F.2d 868, 871 (10th Cir.), *cert. denied,* 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035 (1963). Here, as in *Johnson v. United States,* 485 F.2d 240 (10th Cir. 1973), "[a]ppellant's dissatisfaction with appointed counsel dates from sometime after the sentence was imposed." *Id.* at 242. Prior to sentencing, appellant told the trial judge that he was satisfied with his lawyers. Record, vol. V, at 671; *id.,* vol. VI, at 12, 20–21.

■ Upon consideration of the specific grounds urged by appellant we conclude that they do not support a finding of ineffective assistance of counsel. Nor is there any indication in the record of incompetence on the part of appellant's attorneys rendering the trial a farce, or a mockery of justice which would shock the conscience of the court. *Tapia v. Rodriguez,* 446 F.2d 410, 416 (10th Cir. 1971). We accordingly concur in the district court's finding that appellant was not denied effective assistance of counsel in his state court trial.

II. *Appellant's Claim of Ineffective Assistance of Counsel on Appeal.*

Appellant alleges in a conclusory fashion that he received ineffective assistance of counsel on appeal from his state court con-

viction. Appellant's Brief at 5–6. While appellant does not state the grounds on which he bases this allegation, a review of the record shows that he argued to the district court that his counsel should have appealed to the New Mexico Supreme Court the state court's temporary insanity instruction on page 17 of the trial court's instructions. Record, vol. I, at 48, 58.[6] We will therefore consider the allegedly erroneous temporary insanity instruction as the basis for appellant's claim of ineffective assistance of counsel on appeal.

■ Appellant points out that defense counsel objected to the instruction on the ground that it was vague and ambiguous in its description of temporary insanity, because it did not sufficiently clarify the time element involved, Record, vol. V, at 611, but that counsel did not present that issue to the New Mexico Supreme Court on appeal. Record, vol. I, at 48. When the instructions are considered as a whole,[7] it appears that any ambiguity as to the time element contained in the temporary insanity instruction on page 17 was sufficiently clarified by the instructions on pages 13, 14, 16 and 20. Record, vol. II, at 68–70, 72. *See United States v. Coppola,* 486 F.2d 882, 885 (10th Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974). Thus, the court charged the jury that "[c]rimes involving a guilty intent cannot be successfully prosecuted against one charged who is insane *at the time of commission of the offense,* because an insane person does not have the capacity to form a criminal intent." Page 13 of the Court's Instructions, Record, vol. II, at 68–69 (emphasis added).

---

**6.** Page 17 of the trial court's instructions to the jury reads as follows:

Assuming Defendant's knowledge of the nature and quality of his act and his knowledge that the act is wrong, if, by reason of disease of the mind, the Defendant has been deprived of or lost the power of his will which would enable him to prevent himself from doing the act, then he cannot be found guilty of murder in the first degree or any lesser offense.

Further along this line, the insanity of which we speak does not comprehend an insanity which occurs at a crisis and dissi-

pates thereafter. The insanity of which we speak is a true disease of the mind, normally extending over a considerable period of time, as distinguished from a sort of momentary insanity arising from the pressure of circumstances.

Record, vol. II, at 71.

**7.** *See United States v. Coppola,* 486 F.2d 882, 884–85 (10th Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *cf. Tapia v. Rodriguez,* 446 F.2d 410, 413 (10th Cir. 1971).

The court further instructed that "[u]nder his plea of 'not guilty by reason of insanity at the time of the offense,' the defendant has raised the issue of his sanity *at the time of the alleged offenses.*" Page 14 of the Court's Instructions, Record, vol. II, at 70 (emphasis added). In still another instruction the court stated: "If the jury has a reasonable doubt from the evidence in the case whether the accused was sane *at the time of the offense or offenses,* he should be acquitted on the charges of first degree murder and all lesser offenses including second degree murder, *even though it may appear that he was sane at earlier and later times.*" Page 16 of the Court's Instructions, Record, vol. II, at 70–71 (emphasis added).

■ Furthermore, the trial court's instructions covered the elements of insanity [8] and advised the jury as to the ultimate burden of proof on the issue of insanity.[9] *See State v. Montano,* 83 N.M. 523, 494 P.2d 185, 186 (Ct.App.1972); *State v. James,* 83 N.M. 263, 490 P.2d 1236, 1239 (Ct.App.1971). We therefore conclude that even if the challenged instruction on page 17 was erroneous, counsel's failure to raise it as an issue on appeal does not constitute a " 'failure to observe that fundamental fairness essential to the very concept of justice.' " *United States v. Guerrero,* 517 F.2d 528, 531 (10th Cir. 1975). We agree with the district court that "counsel need not appeal every possible question of law at the risk of being found to be ineffective." *Gillihan v. New Mexico,* No. 74–414 (D.N.M., May 14, 1975), Record, vol. I, at 58–59. We accordingly conclude that appellant was not denied effective assistance of counsel on appeal from his state court conviction.

III. *Appellant's Claim that his Conviction Was Rendered Void by the Imposition of the Death Penalty.*

■ Appellant argues that his conviction was rendered void by the imposition of the death penalty which constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Appellant's reliance on *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), in support of this contention is misplaced. *Furman* did not hold, as appellant seems to contend, that the infliction of the death penalty per se violates the eighth amendment. Rather, "*Furman* held that [the death penalty] could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner." *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883 (1976). The Supreme Court's holding left intact the convictions by merely reversing the judgment in each case before it insofar as it left undisturbed the death sentence imposed. 408 U.S. at 240, 92 S.Ct. at 2727, 33 L.Ed.2d at 350. *Accord, Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2992, 49 L.Ed.2d 944, 962 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 336, 96 S.Ct. 3001, 3008, 49 L.Ed.2d 974, 983 (1976).

Furthermore, four years after *Furman* the Supreme Court held that the imposition of the death penalty does not per se constitute cruel and unusual punishment. The Court stated: "We hold that the death penalty is not a form of punishment that may never be imposed, regardless of the circumstances of the offense, regardless of the character of the offender, and regardless of the procedure followed in reaching the decision to impose it." *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883–84 (1976). *Accord, Jurek v. Texas,* 428 U.S. 262, 268, 96 S.Ct. 2950, 2954, 49 L.Ed.2d 929, 936 (1976); *Proffitt v. Florida,* 428 U.S. 242, 247, 96 S.Ct. 2960, 2964, 49 L.Ed.2d 913, 920 (1976). Appellant's claim that his conviction was rendered void by the imposition of the death penalty must therefore be rejected as being without merit.

---

**8.** Page 16 of the Court's Instructions, Record, vol. II, at 70–71.

**9.** Page 13 of the Court's Instructions, Record, vol. II, at 68–69.

IV. *Appellant's Claim that the Submission to the Jury of the Death Penalty as a Possible Verdict Deprived him of Due Process of Law.*

 Appellant contends that he was denied due process of law and the equal protection of the laws since the jury which sat at his state court trial was given unrestricted power to impose the death penalty without any standards or guidelines by which to be governed. Appellant's Brief at 6. Appellant relies on *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). However, that case does not support appellant's position. The Supreme Court of the United States there held that, by reason of the double jeopardy clause, a defendant could not be retried for murder after he had been tried for murder once before, but had been convicted only of the lesser included offense of voluntary manslaughter. The voluntary manslaughter conviction had been set aside because of an erroneous jury instruction. 398 U.S. at 327–29, 90 S.Ct. 1757.

Moreover, as pointed out previously in connection with appellant's third claim, in the cases before the United States Supreme Court which involved death sentences imposed on the basis of unconstitutional state statutes, the Court only reversed the judgments insofar as they left undisturbed the death sentence imposed. *E. g., Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2992, 49 L.Ed.2d 944, 962 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 336, 96 S.Ct. 3001, 3008, 49 L.Ed.2d 974, 983 (1976); *Stewart v. Massachusetts,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972) (per curiam); *Furman v. Georgia,* 408 U.S. 238, 240, 92 S.Ct. 2726, 2727, 33 L.Ed.2d 346, 350 (1972) (per curiam). We accordingly conclude that appellant was not deprived of due process of law or the equal protection of the laws by reason of the jury's authority to return a death penalty verdict.

V. *Appellant's Claim that the Imposition of the Consecutive Life Sentences Constitutes Impermissible Enhancement of Sentence.*

Appellant contends that the trial court's imposition of consecutive life sentences upon resentencing after the death sentences had been vacated by the New Mexico Supreme Court enhanced his sentence in violation of the double jeopardy clause of the fifth amendment.[10] In support of this contention appellant argues that the four death sentences imposed were necessarily concurrent since they could not be executed consecutively and since the trial court did not specify that they were to run consecutively.[11] Appellant then cites *United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) for the proposition that once a defendant has begun serving his sentence, the sentence may not be enhanced. Appellant's Brief at 7.

 We note at the outset that appellant does not cite any authority in support of his contention that the consecutive life sentences constitute greater punishment than the death sentences originally imposed on each of four convictions of murder in the first degree. Even if we were to accept appellant's enhancement of punishment argument, which we decline to do, it does not follow that the imposition of a greater sentence upon resentencing constitutes a violation of the fifth amendment right against double jeopardy when, as here, the prior sentences had been set aside at the appellant's behest. We previously resolved that issue in *Tipton v. Baker,* 432 F.2d 245, 248–49 (10th Cir. 1970) (footnotes omitted):

---

**10.** Gillihan appealed the trial court's imposition of the consecutive life sentences on the ground that it constituted an improper construction of 1969 N.M.Laws, ch. 128, § 3, repealed by 1973 N.M.Laws, ch. 109, § 3. In affirming the trial court the Supreme Court of New Mexico held that the consecutive life sentences imposed were permissible under the statute. *State v. Gillihan,* 81 N.M. 535, 469 P.2d 514, 515 (1970).

**11.** The merit of the latter part of appellant's assertion is doubtful in light of N.M.Stat.Ann. § 42–1–59 (1972) which provides: "Whenever any convict shall have been committed under several convictions with separate sentences, they shall be construed as one continuous sentence for the full length of all the sentences combined."

We conclude that where, at the defendant's behest, his sentence is set aside on appeal or by collateral attack, the imposition of a greater sentence does not violate Federal double jeopardy principles. *Murphy v. Massachusetts,* [177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711 (1900)]; *Robinson v. United States,* 144 F.2d 392, 397 (6th Cir.), aff'd., 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944; *King v. United States,* 69 App. D.C. 10, 98 F.2d 291, 295; *Bryant v. United States,* 214 F. 51, 53 (8th Cir.); and see *United States v. Smith,* 331 U.S. 469, 474, 67 S.Ct. 1330, 91 L.Ed. 1610. We have considered *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872, and *United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354, relied on by appellant, and similar authorities. There is dicta in the *Benz* case that, while a court may amend a judgment during the term so as to mitigate punishment, it may not increase the penalty because of double jeopardy restrictions. *Id.* at 307, 51 S.Ct. 113. While it is not free from doubt, we nevertheless believe that the prohibition against a sentence being augmented does not apply where invalidation of the prior sentence occurred at the defendant's behest. We agree with the conclusion in *King v. United States, supra,* that the law remains as the *Murphy* case established it " * * * that when a void, or merely voidable, sentence has been vacated as a result of the prisoner's own demands, he cannot complain if his second sentence increases his punishment." 98 F.2d at 295. Thus, we do not agree with appellant's double jeopardy contention.

*Accord, United States ex rel. Ferrari v. Henderson,* 474 F.2d 510, 513 (2d Cir.), *cert. denied,* 414 U.S. 843, 94 S.Ct. 102, 38 L.Ed.2d 81 (1973); *cf. Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 86

L.Ed.2d 714 (1973), *aff'g* 455 F.2d 640 (5th Cir. 1972) (rendition of a higher sentence by a jury upon retrial does not violate the double jeopardy clause).[12] We accordingly conclude that the imposition of the consecutive life sentences upon resentencing did not violate appellant's right against double jeopardy.

VI. *Appellant's Claim that the Trial Court Erred in Giving Certain Instructions.*

Appellant alleges that he was deprived of his sixth amendment right to a fair trial by an impartial jury by reason of the following jury instructions:

The Defendant is presumed to be innocent and sane, and that presumption remains with him and goes with him throughout the progress of the trial until his guilt is established by the evidence introduced in the case to your satisfaction and beyond a reasonable doubt, and his sanity, as defined and in accordance with the instructions given you, is established beyond a reasonable doubt.[13]

. . .

There is nothing peculiarly different in the way a jury should consider the evidence in a criminal case, from that in which all reasonable persons treat any question depending upon evidence presented to them. You are expected to use your good sense; consider the evidence in the case for only those purposes for which it has been admitted, and give it a reasonable and fair construction, in the light of your common knowledge of the natural tendencies and inclinations of human beings.[14]

Appellant complains that the first instruction quoted above combined, in an ambiguous and confusing manner, the presumption of innocence and the presumption of sanity. The second instruction quoted

---

**12.** Appellant does not attack the alleged enhancement of his sentence on due process grounds, *see North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969), and we have therefore no occasion to consider the due process issue here. For our previous treatment of that issue see *Tipton v. Baker,* 432 F.2d 245, 249–50 (10th Cir. 1970). *See also United States ex rel. Ferrari v. Henderson,* 474 F.2d

510, 513 (2d Cir.), *cert. denied,* 414 U.S. 843, 94 S.Ct. 102, 38 L.Ed.2d 81 (1973).

**13.** Page 20 of the Court's Instructions, Record, vol. II, at 72.

**14.** Page 29 of the Court's Instructions, Record, vol. II, at 80.

**1192**

above is attacked by appellant on the basis that it detracted from the presumption of innocence. An examination of the instructions as a whole [15] reveals that the trial court explained to the jurors with sufficient clarity the presumptions of innocence and sanity, and instructed them several times that both guilt and sanity had to be established by proof beyond a reasonable doubt. Record, vol. II, at 63–64, 67–70, 72–73. It is well established that

> habeas corpus is not available to set aside a conviction on the basis of erroneous jury instructions unless the error has such an effect upon the trial as to render it so fundamentally unfair that it constitutes the denial of a fair trial in the constitutional sense.

*Linebarger v. Oklahoma,* 404 F.2d 1092, 1095 (10th Cir. 1968) (footnote omitted), *cert. denied,* 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1969). *Accord, Lorraine v. United States,* 444 F.2d 1 (10th Cir. 1971) (per curiam); *York v. Page,* 433 F.2d 941 (10th Cir. 1970); *Ortiz v. Baker,* 411 F.2d 263 (10th Cir.) (per curiam), *cert. denied,* 396 U.S. 935, 90 S.Ct. 279, 24 L.Ed.2d 234 (1969). We conclude that appellant's assertions of error with respect to the jury instructions raise only questions of trial errors without federal constitutional significance for which federal habeas corpus relief is not available. *Ortiz v. Baker,* 411 F.2d 263 (10th Cir.) (per curiam), *cert. denied,* 396 U.S. 935, 90 S.Ct. 279, 24 L.Ed.2d 234 (1969); *Linebarger v. Oklahoma,* 404 F.2d 1092, 1095 (10th Cir. 1968), *cert. denied,* 394 U.S. 938, 89 S.Ct. 1218, 22 L.Ed.2d 470 (1969); *Pierce v. Page,* 362 F.2d 534 (10th Cir. 1966) (per curiam).

VII. *Appellant's Claim that the Trial Court Erred in Admitting into Evidence Certain Testimony.*

In his final contention appellant claims that the trial court erred in admitting into evidence a pathologist's testimony interpreting blood alcohol tests which were taken during the postmortem examination of the murder victims. Appellant alleges that there was evidence before the jury that he and the victims were intoxicated on the day of the slayings.[16] Therefore, appellant reasons, the pathologist's incorrect estimation of the quantity of alcohol consumed by the victims completely misled the jury with respect to appellant's state of intoxication. The testimony, according to appellant, must have led the jury to believe that he was not intoxicated.

The difficulty with appellant's argument is that there was ample evidence before the jury on the basis of which it could have found that appellant was not intoxicated. Thus, appellant made the following statements in his confession which was read to the jury:

Q. [Mr. Martin] What size was the first bottle of wine?

A. [Appellant] Half gallon and the last one was a half gallon.

Q. Were all of you drinking from it?

A. Yes, sir.

Q. How much did you have to drink?

A. Not enough to get drunk.

Q. You were not drunk at the time?

A. No, sir.

Q. You really knew what you were doing at that time?

A. Yes, sir.

Record, vol. IV, at 481. Furthermore, even if the admission of the pathologist's testimony constituted error, it was at most a mere trial error which is not reviewable by way of federal habeas corpus. *Pierce v. Page,* 362 F.2d 534 (10th Cir. 1966) (per curiam). The rule is well established that state court rulings on the admissibility of

---

**15.** *See York v. Page,* 433 F.2d 941, 942 (10th Cir. 1970). *See also* cases cited note 7 *supra.* The jury was specifically instructed to "consider these instructions as a whole, not picking out one instruction or parts thereof and disregarding others." Page 27 of. the Court's Instructions, Record, vol. II, at 78.

**16.** In his confession, which was read into the record, appellant stated that he and the four victims shared two half gallon bottles of wine. Record, vol. IV, at 481.

evidence may not be questioned in a federal habeas corpus proceeding, unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *E. g., Bell v. Arn,* 536 F.2d 123, 125 (6th Cir. 1976); *Schleicher v. Wyrick,* 529 F.2d 906, 911 (8th Cir. 1975); *Sherrill v. Wyrick,* 524 F.2d 186, 190 (8th Cir. 1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332 (1976); *Alexander v. Daugherty,* 286 F.2d 645 (10th Cir.), *cert. denied,* 366 U.S. 939, 81 S.Ct. 1666, 6 L.Ed.2d 849 (1961); *Schechter v. Waters,* 199 F.2d 318 (10th Cir. 1952); *cf. Carrillo v. United States,* 332 F.2d 202 (10th Cir. 1964). Appellant was not deprived of any constitutional right by reason of the admission into evidence of the pathologist's testimony.

VIII. *Conclusion.*

Having considered each of appellant's claims urged in support of his petition for a writ of habeas corpus and having reviewed the entire record we are convinced that the federal district court was correct in denying relief. Accordingly, the judgment of the district court is affirmed.