Thomas Alvin LOGAN, Petitioner-Appellant,

v.

R. C. MARSHALL, Supt., Southern Ohio Correctional Facility, Respondent-Appellee.

No. 81–3597.

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1982.

Decided June 18, 1982.

* Honorable Elbert P. Tuttle, Senior Judge, U. S. Court of Appeals for the Eleventh Circuit, sitting by designation.

J. Dean Carro, School of Law, University of Akron, Akron, Ohio, for petitioner-appellant.

Dain N. Deveny, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before LIVELY and KEITH, Circuit Judges and GILMORE,* District Judge.

PER CURIAM.

On April 18, 1978, Theresa Riley, a 17 year old minor, left her residence at approximately 11:00 a. m. to purchase cigarettes. While walking on the street, she was approached by the defendant-petitioner, Thomas Alvin Logan. Logan was a social acquaintance of Riley. Logan offered Riley librium tranquilizer pills. Riley refused to accept the pills. Subsequently, Logan produced a knife and held it at her throat. Logan forced Riley to accompany him into an alley around a corner, and down a flight of stairs. Riley was raped at knifepoint at the base of the stairs. Logan released Riley immediately after the rape.

Physicians examined Riley following the rape and determined that semen was present. Physicians also discovered that Riley had gonorrhea. This venereal disease was present in Riley prior to the time of the alleged rape.

Under Ohio law, a pre-trial hearing must be held before evidence is received regarding the sexual activities of the alleged rape victim. See Ohio Rev.Code Ann. § 2907.-02(E). In compliance with this requirement, an in-chambers hearing was conducted to determine the admissibility of certain evidence under Ohio's Rape Shield Statute, Ohio Rev.Code Ann. § 2907.02(D). Defense counsel read several questions he intended to ask Riley. The questions were inflammatory and evidenced an attempt to attack the character of the alleged victim. After a brief discussion, the prosecution agreed to allow defense counsel to question Riley concerning her sexual activity during the three days prior to the alleged rape. The prosecution, however, vigorously maintained that the evidence of venereal disease was not relevant or probative. Subsequently, the court ruled that Logan could not question the alleged victim regarding the presence of gonorrhea.

Later, the prosecution sought clarification of the court's ruling. Defense counsel argued that the gonorrhea evidence was relevant to the issue of the origin of the semen. The prosecution disagreed, stating defense counsel was again attempting to attack the character and credibility of Riley. The court ruled that the issue of gonorrhea could not be mentioned during the trial.

At trial, Logan and Riley each reiterated their respective stories. Logan maintained that he did not have intercourse with Riley and was, in fact, elsewhere at the time of the alleged rape. Logan took the stand and explained the significant events in his alibi defense. Riley, on the other hand, took the stand and testified that Logan attempted to give her drugs and raped her. There was no direct or circumstantial evidence other than the testimony of Riley which linked Logan to the alleged rape. A jury convicted Logan.

■ Logan brought this habeas corpus action after exhausting his state court remedies. Logan's basic contentions are that 1) his right to confrontation was violated by the trial court's refusal to permit cross-ex-

---

* Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

amination concerning the presence of gonorrhea in Riley; and 2) the court's ruling prevented counsel from fully developing his defense. Logan argues that his defense would have been that he did not commit the rape because he did not get gonorrhea:

1. The alleged victim had venereal disease at the time of her rape.
2. Mr. Logan did not subsequently contract the venereal disease.
3. Scientific evidence indicates there is a 25% probability that a male will contract gonorrhea from an infected female after a single intercourse.

Unfortunately, the record indicates that defense counsel never informed the trial court that the gonorrhea evidence would be used in the above manner. In fact, a fair reading of the record reveals that defense counsel sought to use the gonorrhea evidence to attack the character of the alleged victim. Therefore, it appears that the gonorrhea theory articulated above was developed on appeal rather than as an integral part of Logan's trial strategy.

We must evaluate the validity of the court's ruling in light of the information available to the trial judge at the time of his ruling. On the special facts in this case, it is clear from the list of questions offered by defense counsel and his objection to the exclusion of the gonorrhea evidence that he intended to attack the credibility of the victim with this evidence. The exclusion of such inflammatory evidence is within the discretion of the trial judge. *Oliphant v. Koehler*, 594 F.2d 547 (6th Cir. 1979). Logan was not denied his constitutional right to raise a defense in light of defense counsel's failure to inform the trial judge of the proposed relevance of the gonorrhea evidence.

■ All that is involved in this action is an evidentiary ruling by a state trial court judge. It is not this Court's function to supervise the courts of the State of Ohio. It is a well-established rule that state court rulings on the admission or exclusion of evidence "... may not be questioned in a federal habeas corpus proceeding, unless

they render the trial so fundamentally unfair as to constitute a denial of federal rights." *Gillihan v. Rodriguez*, 551 F.2d 1182, 1193 (10th Cir. 1977). *See Bell v. Arn*, 536 F.2d 123, 125 (6th Cir. 1976). The evidentiary ruling of the state trial court judge in the present case does not give rise to a constitutional violation.

Upon consideration of the briefs, arguments of counsel, and the record, we affirm the judgment of the district court. District Judge Leroy Contie's well-reasoned opinion displayed a sensitivity to the position of federal courts in habeas matters.