CLAY, Circuit Judge,
concurring in the judgment only.
While I agree with the plurality’s decision to deny habeas relief, I write separately to clarify the limitations required under the Michigan rape shield law and to further respond to the dissent’s argument in favor of admitting “pattern of conduct” evidence.
In its discussion of evidence indispensable to the defense, the dissent misapplies the facts and the application of law as to whether Clark’s sexual history is admissible evidence as an exception under Michigan’s rape shield law. According to Michigan evidentiary rules, “evidence of the victim’s past sexual conduct with the actor” may only be admitted under Michigan’s rape shield law if the “proposed evidence is material to a fact at issue in the case.” Mich. Comp. Laws § 750.520j(l)(a). As a matter of legal interpretation, it is clear that this statutory provision outlines what evidence can be presented (past conduct between victim and actor) and for what purpose (as an offer of proof of a material fact at issue).
In this case, the fact at issue was one of consent. Therefore, under the rape shield statute, the trial court had the discretion to permit Gagne to present the Bermudez evidence if it was material to prior consent between Clark and himself. But there was no dispute at trial that Clark and Gagne had had prior consensual sexual encounters, even on the day in question. So it is clear that the purpose of the Bermudez evidence would not have been to demonstrate prior consent between Clark and Gagne, but prior consent between Clark and Bermudez. What is not clear is how evidence of consensual sex between Clark and Bermudez would be material to the material factual issue of whether Clark consented to sex with Gagne on July 3, 2000. Contrary to the dissent’s position that the Bermudez incident was “critical” to Gagne’s defense, the factual conclusion that the Bermudez evidence was indispensable to the central dispute in the case because of the lack of other evidence is unsupported by the record. The only bridge to finding evidence of consensual sex between Clark and Bermudez material to whether Clark had consensual sex with Gagne on July 3, 2000 is to conclude that the kind of woman who would say “yes” to someone is the kind of woman who always says “yes.” But this is the kind of assumption that the Michigan legislature attempted to circumvent by enacting its rape shield law, and to rule otherwise would undermine the obvious intent of the legislature. See People v. Arenda, 416 Mich. 1, 330 N.W.2d 814, 816 (1982) (stating that “[primarily, [rape shield statutes] serve the substantial interests of the state in guarding the complainant’s sexual privacy and protecting her from undue harassment.”). It is clear that the purpose of the Michigan rape shield law is to protect witnesses, such as Clark, from the intrusive inquiries which could open the evidentiary door to allow a defendant to pry into a victim’s sexual history. Such superfluous details of Clark’s sexual activity with Bermudez would serve no purpose but to embarrass or humiliate Clark; and furthermore, they fail the materiality test, and should be excluded.
Regardless, whether the Michigan rape shield law actually required exclusion of the Bermudez evidence is a state law question not cognizable by this Court under habeas review. The issue of whether the trial court rightly excluded this evidence should not factor into this Court’s determination. See Logan v. Marshall, 680 F.2d 1121, 1123 (6th Cir.1982) (per curiam) *525 (finding that it is not the court’s responsibility to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner’s “trial so fundamentally unfair as to constitute a denial of federal constitutional rights”) (citation omitted). Therefore, there is no evidence of clearly established federal law on the specific issue presented in this case, which is primarily one of state court application of state law. In addition, the evidence from the Bermudez incident was not sufficiently material to warrant an exception under the Michigan rape shield law.
Equally unpersuasive is the dissent’s “fairness and common sense” standard that it utilizes to support the admissibility of “pattern of conduct” evidence. In this regard, the dissent would support the analysis of the district court. The opinion of the district court hinged on its conclusion that “[ejvidence of prior group sex involving Petitioner and Bermudez and evidence of the complainant’s invitation to Petitioner’s father was an indication that it was not unusual or implausible for the complainant to engage in a ‘threesome.’ ” Gagne v. Booker, 2007 WL 1975035, at *8 (E.D.Mich.2007). Simply speaking, the district court found that the evidence was critical to show Clark’s propensity, or “pattern of conduct,” for engaging in group sexual activity. Id.
The district court determined that the presentation of this kind of propensity evidence was pivotal to Gagne’s defense because it helped establish a “pattern of conduct” which made the claim that Clark consented to the July 3, 2000 sexual encounter “more probable.” Id. The district court therefore held “that Petitioner’s right to a fair trial and his right to present a full and meaningful defense were violated by his inability to introduce additional facts about the complainant’s conduct. The omitted evidence might have created a reasonable doubt that did not otherwise exist, and it might have altered the jury’s impression of the complainant’s credibility.”[1] Id.
Gagne did not argue, nor did the district court find, that the purpose of introducing the Bermudez evidence went to Clark’s “motive, bias or prejudice,” but instead to her propensity. Nonetheless, the district court found that the Sixth Amendment required that Gagne be allowed to point to individual instances of Clark’s past conduct to generally attack her credibility, even though this Circuit has previously held that the Constitution has no such requirement. See Boggs v. Collins, 226 F.3d 728, 739-41 (6th Cir.2000) (concluding that an accuser’s credibility “will almost always be the cornerstone of a rape or sexual assault case, even if there is physical evidence— the Constitution does not require that a defendant be given the opportunity to wage a general attack on [an accuser’s] credibility by pointing to individual instances of past conduct ... [and] simply does not reflect Sixth Amendment case-law.”).
As the plurality appropriately states, Crane represents the general principle that “the Constitution guarantees criminal defendants ‘a meaningful opportunity to present a complete defense’ — such that the court may not ‘exclude competent, reliable, evidence ... central to the defendant’s *526 claim of innocence, ... [i]n the absence of any valid state justification.’ ” Plur. Op. at 516. But the relevant holding of Crane was that “the blanket exclusion of the proffered testimony about the circumstances of petitioner’s confession deprived him of a fair trial.” Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). The Supreme Court rationalized this holding by explaining as follows:
That opportunity [to be heard] would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant’s claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor’s case encounter and survive the crucible of meaningful adversarial testing.
Id. at 690-91, 106 S.Ct. 2142 (internal quotation marks and citation omitted). Mindful of this relevant holding, the Supreme Court’s conclusion must be considered in light of the facts of that particular case. The Supreme Court’s four-page decision in Crane concerned a Kentucky procedural rule that disallowed evidence of the “voluntariness” of a confession to be litigated at trial. Due to this rule, evidence of the highly coercive circumstances of a 16-year old boy’s murder confession was not presented before a jury, where the prosecution “rested almost entirely” on the confession. Id. at 685, 106 S.Ct. 2142.
Contrary to the dissent, a federal court sitting in habeas should not conclude that this analysis and holding “clearly establishes” that a defendant in a criminal sexual assault case has a constitutional right to present hearsay evidence[2] (that is, neither “competent” nor “reliable”) bearing only on “predilections” (not credibility or “innocence”) when such evidence is cumulative, perhaps irrelevant, and certainly not impeaching (instead of “central”). See Bell v. Harrison, 670 F.2d 656, 658 (6th Cir.1982) (finding that evidence of a rape victim’s past sexual behavior is neither a determinative or reliable indicator of the victim’s consent to a specific act nor constitutionally required to be admitted); see also Logan, 680 F.2d at 1123. And furthermore, such a defendant’s right to present this hearsay evidence bearing on predilections survives even when the state does have a “valid state justification” for its exclusion; and there is no “blanket exclusion” rule, but instead a discretionary, state law evidentiary rule, held to be constitutionally valid by the Supreme Court. See Michigan v. Lucas, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).
I therefore concur in the judgment, only, to reverse the district court.

. Relevant to the issue of credibility is the fact that Clark never testified that she was averse to group sexual activities or that she had never participated in them. On the contrary, she testified that she may have engaged in exactly such activities with Gagne and Swath-wood in the past. However, she testified that she did not consent on the evening of July 3, 2000.

. There is no indication that Gagne was prepared to call Bermudez or his father to the stand, but instead it appears that Gagne would have introduced the Bermudez evidence only through his testimony.