Carlos E. SANCHEZ, Petitioner-Appellee,

v.

Gordon W. HEGGIE, Warden, Colorado State Penitentiary, Respondent-Appellant.

No. 75–1249.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1975.

Decided March 9, 1976.

E. Ronald Beeks, Asst. Atty. Gen., Denver, Colo. (J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Denver, Colo., on the brief), for respondent-appellant.

Kevin P. Kubie, Denver, Colo., for petitioner-appellee.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

The United States District Court for the District of Colorado granted appellee, Carlos Sanchez, habeas corpus relief under 28 U.S.C. § 2254. The warden of the Colorado State Penitentiary has appealed. Appellee was convicted of statutory rape and first degree murder in Colorado state court. His conviction was affirmed by the Colorado Supreme Court which found no merit in the contention before us. *People v. Sanchez,* 518 P.2d 818 (Colo.1974). The issue is whether certain improper remarks in the prosecuting attorney's closing argument were unconstitutional references to appellee's failure to testify.

In *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held any comment on a defendant's failure to testify violates his Fifth Amendment privilege against self-incrimination. In *Knowles v. United States,* 224 F.2d 168 (10th Cir. 1955), this Court announced the test we follow in determining when a comment will be considered a reference to a defendant's failure to testify. "[T]he test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (224 F.2d at 170).[1] The district court found three separate comments in the prosecuting attorney's closing argument violated appellee's right under this test. To give them proper consideration, the comments must be placed in context.

The State's evidence was entirely circumstantial. The victim of the crime, Jayne Martinez, was a 14-year-old girl. On the day of the murder, she was baby-sitting for an acquaintance of appellee and had never before met appellee. Twice that evening appellee had been to the apartment where Jayne was baby-sitting and had been allowed inside. The second time he left at about 2:00 a.m. He was seen at a night club at about 3:30 a.m. The victim's body was found at 9:00 a.m. that same morning.

The State relied on the following evidence to link appellee to the crime: (1) When appellee was seen at the night club, he had no scratches on his face or hands; when he was arrested a day and a half later, he did have scratches on his face and hands. (2) Green cotton fibers found on the victim's blouse and slacks were microscopically like the fibers composing appellee's sweatshirt. (3) Hairs found on the stocking used to strangle the victim were microscopically identical to hairs from appellee's head. (4) Many hairs microscopically like the victim's hair were found on appellee's coat. (5) Two hairs microscopically like the victim's hair were found adhering to an apparent blood stain on appellee's coat. (6) Juniper needles on appellee's pants were microscopically identical to samples taken where the body was found. (7) Scrapings from appellee's coat contained soil identical to a sample from the scene where the body was found. (8) Appellee admitted wearing the sweatshirt, pants and coat on the day of the murder.

Appellee's defense counsel made strong attack on this evidence in his closing argument. He emphasized that there was no sign of a struggle at the apartment. He argued it would be highly unlikely that Jayne would voluntarily leave the apartment with appellee, who was a virtual stranger. Defense counsel also emphasized that there was no sign of a struggle at the place where the body was found. He questioned why, if appellee had committed a violent rape and murder, he had no soil from the scene on his pants.

The prosecuting attorney answered these arguments by stating the government did not contend the crime occurred at a specific place—either the apartment or the location where the body was found. He noted that Jayne had earlier let appellee inside without question. In making his point the prosecutor stated, "I am sure she went to that

---

1.  *Accord, Doty v. United States,* 416 F.2d 887 (10th Cir. 1968), *vacated in part sub nom.,* 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542.

door agreeably. I don't know, and really none of us know, other than Carlos, where this actual murder and rape took place."

■ The district court construed this remark as a comment on appellee's failure to testify. We think the comment could be construed two ways. It could mean, "Carlos knows because he is guilty." Or it could mean, "Carlos knows and he should have told us about it." We think the most likely implication is the first—that Carlos is surely guilty. As the prosecutor was pointing out, where the crime took place is not a necessary element of proof and called for no testimony or explanation by either the State or appellee. Rather than demanding an explanation, he was arguing the whole matter was collateral and did not detract from the evidence of guilt. The comment was really an indirect, but obviously improper, statement of the prosecuting attorney's belief in appellee's guilt. This interpretation of the comment is supported by defense counsel's objection on the ground "there is some inference that he knows." Although the objection was incorrectly overruled, it indicates defense counsel perceived the comment as an inference that appellee was guilty rather than an inference that his failure to testify should be considered against him.

■ Under the test of *Knowles v. United States, supra,* we should not overturn a conviction because a remark might possibly be construed as a reference to an accused's failure to testify. We do not believe the prosecuting attorney's statement was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." [2]

The other two prosecution comments found to be constitutional error by the district court were also made in response to defense counsel's closing argument. Defense counsel called the jury's attention to

the circumstantial evidence instruction which states the evidence in such a case must be inconsistent with any reasonable hypothesis of innocence. His whole argument was based on the contention the evidence was consistent with "a reasonable hypothesis of innocence." Although he did not offer a hypothesis of innocence, defense counsel did attempt to show how some of the physical evidence could have come into existence in a manner consistent with innocence. He did so primarily by attacking the reliability of the prosecution's evidence based on weaknesses in the chain of custody. A hair was found on the victim's thigh which was visibly different from either her hair or appellee's hair. This evidence was lost somewhere in the process of gathering evidence and sending it to the FBI laboratories in Washington, D. C. Appellee's counsel used this and other weaknesses as a basis for arguing the other prosecution evidence may have been contaminated.

In his closing argument, the prosecuting attorney also called attention to the circumstantial evidence instruction and stated if there was a reasonable hypothesis of innocence, "we haven't heard it from defense counsel." He then showed the jury the photographs of the victim which vividly depicted her final struggle for life. He argued that this struggle was the only way appellee's hair could have gotten onto the stocking used to strangle her and was the only way the victim's hair could have gotten on appellee's coat. The prosecutor then made the following remarks:

That is the truth in this case, that is where that person's hair got on that noose, and there has been no reasonable explanation, and in fact, there has been no explanation at all. The defendant's coat, the victim's hair stuck to human blood on the defendant's coat; no explanation, because there is not a possible explanation.

**2.** Other cases are not particularly helpful because of the factual differences. However, the two cases we have found closest to this case factually have reached the same conclusion. *See United States v. Reicin,* 497 F.2d 563 (7th

Cir. 1974), *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269; *United States v. Kubitsky,* 469 F.2d 1253 (1st Cir. 1972), *cert. denied,* 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 198.

After defense counsel's objection that defendant "doesn't have to explain or prove anything" was sustained, the prosecuting attorney continued:

Defense counsel, and I might add that during the course of this, other than direct reference I am referring in regards to the proof, and as to what defense counsel did not do. They may have, I guess hoped that you would infer that those hairs jumped out of those sealed bags in the flight back to Washington, D. C. and jumped over to that coat and got stuck to that blood stain. Those two factors alone. Neither have even been attempted to have been explained.

At this point defense counsel's objection was again sustained on the ground that "Counsel for the defendant is in no different position than the defendant."

We cannot agree with the district court's characterization of these statements as comments on appellee's failure to testify. In his closing argument, defense counsel had set out to show how the prosecution's evidence was consistent with a reasonable hypothesis of innocence. He suggested the incriminating hairs were present because of contamination of the evidence. In reply, the prosecuting attorney was entitled to make his point that this was not "reasonable explanation" of how the evidence could be consistent with a hypothesis of innocence. *United States v. Thundershield,* 478 F.2d 241 (8th Cir. 1973), *cert. denied,* 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100.

Moreover, in answering the first defense objection, he specifically stated he was referring "to what defense counsel did not do." A prosecuting attorney "does have the right to reply to an argument raised by his opposing advocate." *United States v. Casteel,* 476 F.2d 152, 155 (10th Cir. 1972). As the court noted in *United States v. Isaacs,* 493 F.2d 1124, 1164–65 (7th Cir. 1974), *cert.*

denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, defense counsel's argument may invite a response to its weaknesses. The response need not be "confined to such detached exposition as would be appropriate in a lecture." *Quoting United States v. Wexler,* 79 F.2d 526, 530 (2d Cir. 1935), *cert. denied,* 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991. We think the comments in this case fall within the "considerable latitude" an advocate is permitted in responding to his opponent's arguments.[3]

It is unfortunate that the prosecutor chose the word "explanation" which could connote an explanation from the witness stand. However, we do not believe the probability that the jury would attach this connotation is great enough to satisfy the *Knowles* test. The predominant theme of the argument was defense counsel's failure to show how the evidence could be consistent with a reasonable hypothesis of innocence, and we believe the jury would have interpreted these particular comments as directed toward defense counsel rather than appellee. *See United States v. Isaacs, supra; United States v. Hill,* 508 F.2d 345 (5th Cir. 1974), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 672.

There is no contention that appellee's trial was conducted without error. We have decided, however, that none of the alleged errors violated appellee's Fifth Amendment privilege against self-incrimination. Neither do we believe the prosecutor's comments deprived appellee of a fundamentally fair trial in violation of the Fourteenth Amendment's due process clause. In *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), the Supreme Court recognized the distinction between ordinary trial error and constitutional error. A federal court does not have supervisory jurisdiction over state

---

**3.** The comments in *Isaacs* were similar in context and content to those in this case. They were directed towards defense counsel rather than defendant and used the term "explanation."

We have waited now six weeks for the explanation of why Isaacs didn't want to endorse

that check. Finally, Mr. Wolfson [defense counsel] gives it to us, and that's the reason. The court held the comments were invited by defense counsel's attempt to "explain Isaacs' mental processes" and were not "an invitation to the jury to hold Isaacs' failure to testify against him." 493 F.2d at 1165.

courts and may overturn a state court conviction only when a defendant's constitutional rights have been violated. We find no constitutional infirmity in the prosecutor's comments and therefore reverse the judgment of the district court.

Reversed.