**UNITED STATES of America, Appellee,**

v.

**Larry WALTON et al., Appellants.**

**Nos. 76–1185 to 76–1187.**

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 25, 1977.

Decided March 14, 1977.

Certiorari Denied June 6, 1977.
See 97 S.Ct. 2685.

Richard L. Hathaway, Asst. U. S. Atty., Kansas City, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief), for appellee.

Leonard D. Munker, Federal Public Defender, Kansas City, Kan. (John O. Martin, Topeka, Kan., on the brief), for appellants.

Before LEWIS, Chief Judge, and PICKETT and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Larry Walton (Larry), his sister, Linda Kaye Walton (Linda), and Clarence Fulton Davis (Davis), the father of Linda's child, appeal from jury verdicts of guilty and subsequent sentences following convictions from charges contained in a five (5) Count superseding Information. They were charged with having aided and abetted (thus subjecting themselves to punishment as principals) in the interstate transportation of falsely made, forged, altered, or counterfeited securities, with unlawful, knowing, and fraudulent intent, all in violation of 18 U.S.C. §§ 2314 and 2.

The jury verdicts of guilty were returned as follows: Larry as to Counts 1, 2, 3, 4, and 5; Linda as to Counts 1 and 4; and Davis as to Counts 1, 2, and 4.

On appeal, we must review the evidence in the light most favorable to the Government, together with all reasonable inferences to be drawn therefrom, from which the jury could find the defendants guilty beyond a reasonable doubt. *United States v. Crocker,* 510 F.2d 1129 (10th Cir. 1975); *United States v. Yates,* 470 F.2d 968 (10th Cir. 1972).

Five checks of Accredited Investments Diversified, Inc., of Kansas City, Missouri, admitted in evidence, were stolen from the company offices on or about February 11, 1975. One Linda R. Grasberger, secretary to Diversified's president, identified Larry as the person she observed departing from the company office in Kansas City, Missouri, about noon one week prior to the date the five checks were returned to the company office with notice that the account upon which the stolen checks had been written was overdrawn. Grasberger had confronted Larry as he was departing because she suspected him of some wrongdoing during a visit he had made to the offices several days before. Grasberger testified that after she saw Larry leaving an office, she inquired whether she could help him. He responded that he was looking for employment; and he "fumbled around" somewhat. She informed him there was no employment available there. Larry left "pretty fast." She called security officers but they were unable to locate Larry. Grasberger identified Larry in the courtroom as the same person she had observed in the company office that day. The five Diversified checks were forged and negotiated at stores in Kansas City, Missouri. Each was written on Diversified's account with Southgate State Bank and Trust Company of Prairie Village, Kansas.

FBI Agent McGinty testified that Larry admitted to him on two separate occasions, after having been fully informed of his rights, that he had stolen some seven or eight Diversified checks from its Kansas City, Missouri, office during a lunch hour. McGinty further testified that Davis denied any knowledge of the checks and declared that it was absurd to believe that any identification of his finger prints would be traced to any of the stolen checks.

Nehemiah Smith, Jr. testified that Larry arranged to make available to him Diversified checks when Smith knew that Larry had stolen them. Smith cashed the forged checks and received part of the proceeds.

One check was received by Smith from Davis in the presence of Linda, and she filled out the face of that check in his presence and that of Davis. Smith cashed this check. Three Diversified checks were received by Smith from Davis at Davis' apartment in the presence of Linda who filled out the face of those checks. Davis applied the check protector to complete the amounts of each check. Smith received some additional Accredited checks from Larry.

Expert testimony established: fingerprints of Linda were identified on two of the checks; prints of Davis were identified on one of the checks; and the handwriting on the face of one of the checks and the endorsement on another were identified as that of Larry. Each of the checks moved in interstate commerce, i. e., from Missouri to the Prairie Village Bank in Kansas.

The alleged trial court errors presented for our review on appeal are: (1) denial of Davis' and Linda's motions for severance, (2) refusal to grant a mistrial (absent objection or motion) by reason of certain prejudicial statements made during closing arguments by counsel for Linda, (3) unduly limiting the scope of cross-examination of a key prosecution witness, (4) in admitting evidence against the appellants of other alleged crimes which were not charged in the Information, (5) in refusing to grant Larry's motion for mistrial when an FBI agent testified that he was interviewed while Larry was "in jail on another matter," (6) in refusing to allow counsel for Larry to call as a rebuttal witness an FBI agent, and (7) in failing to grant appellants' motions for judgment of acquittal, both at the conclusion of the government's evidence and at the conclusion of all of the evidence presented at trial.

### I.

Davis and Linda allege that the trial court erred in denying their motions for severance.

Davis' pre-trial motion was grounded on the assertion that his co-defendants, Linda and Larry, had "given statements to law enforcement officers, and if said statements are introduced at a joint trial, the defendant will be unduly prejudiced." This concern did not materialize in that none of the statements implicated a co-defendant. The pre-trial motion filed by Linda was based upon grounds basically identical to those advanced by Davis. Again, her concerns did not materialize at trial. Larry did not file such a motion.

The record does not reflect that the trial judge was in anywise alerted or advised that any of the three defendants intended to testify in his or her behalf. Nothing presented in the pre-trial motions could have led the court to any specific, articulable prejudice which might likely be incurred by the three defendants by reason of their trial joinder. Fed.Rules Cr.Proc. rule 14, 18 U.S.C.A.

The alleged trial court errors on the severance issue involved several distinct contentions. Davis and Linda concede that even though no inculpatory statements were introduced at trial presenting a *Bruton* problem [*Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)] that nonetheless sufficient prejudice resulted to them from their joinder for trial with Larry creating an abuse of discretion when evidence was admitted showing that Larry: (a) was in jail on an unrelated charge during an interview with an FBI agent, and (b) had committed an uncharged crime to which Davis and Linda were not shown to be parties to.

Further contentions of prejudice resulting from joint trial are advanced as follows: (c) Davis and Larry were prejudiced by comments made during closing arguments by Linda's counsel relative to their failure to testify (Linda was the sole defendant to testify in her defense), and (d) Linda was prejudiced by admission of evidence that Davis had stolen the "John H. Johnson" identification which he had in turn given to Nehemiah Smith when she was not shown to have participated in the transaction.

In *United States v. Davis,* 436 F.2d 679 (10th Cir. 1971), two defendants were jointly indicted, tried and convicted of the same charges involved in the instant case, i. e.,

interstate transportation of forged and false securities in violation of 18 U.S.C. § 2314. One moved for severance prior to trial. We held that a motion for severance is directed to the sound discretion of the trial court, citing to *United States v. Rodgers,* 419 F.2d 1315 (10th Cir. 1969). We there held that refusal to grant such a motion is error only when that discretion has been abused. In *Davis,* as in *Rodgers,* we noted that Fed.Rules Cr.Proc. 8(b), 18 U.S.C.A. permits the joinder of two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses . . ." We stated that reversible error would result if statements made by a defendant at the time of his arrest or thereafter which incriminated a co-defendant were introduced. The post-arrest statements made to FBI agents in the instant case by Davis and Larry *did not* incriminate any co-defendant. Accordingly, the trial court did not abuse its discretion by not severing on this ground.

### (a) and (b)

■ The claimed prejudice to Davis and Linda by reason of admission of evidence that Larry had committed an uncharged crime to which they were not parties to, together with the alleged prejudicial effect upon them by reason of the FBI agent's statement that he had interviewed Larry while "He was in jail on another matter," do not constitute plain error.

■ One must make a strong showing of prejudice in order to obtain the severance relief permissible under Rule 14. No such showing has been made in respect to the above claims. Reference to Larry's incarceration occurred during FBI Agent McGinty's testimony about an interview. McGinty had been asked "Would you explain to us what that conversation was, please?" to which he responded "He was in jail on another matter . . .". [R., Vol. I, p. 198.] Motion for mistrial was made and overruled. The court gave an immediate cautionary instruction that the jurors must disregard any evidence that Larry was in jail on another offense at the time of the interview and that such was completely irrelevant to any issue in the case. During the same examination, Agent McGinty related that during the same interview, Larry said that he had gone to Columbia, Missouri, where he obtained some checks from Automated Professional Management, Incorporated, by reaching across the counter and stealing them. [R., Vol. I, p. 201.] Motion for mistrial was lodged, predicated upon admission of evidence of "another crime in Columbia, Missouri" not charged in the instant case. The court observed that "this is the pattern modus operandi, intent evidence." [R., Vol. I, pp. 201, 202.] Thereupon, the court carefully instructed the jury that any such evidence is admitted solely and only to show intent arising out of a pattern, common scheme or design to commit the charged offense. Detailed written instructions were also tendered to the jury limiting consideration of this testimony on the same basis.

■ The totality of the caution exercised by the trial court in relation to the prejudices claimed by reason of joinder of the parties resulting from testimony set forth in (a) and (b) is such that no plain error occurred. This is particularly compelling in light of the substantial weight of evidence establishing the guilt of the defendants. The above claimed errors raised by Davis and Linda fail to establish sufficient prejudice to support their motions for severance or to warrant a holding by this court that the trial court abused its discretion in denying the respective motions. *United States v. Earley,* 482 F.2d 53 (10th Cir. 1973), *cert. denied,* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973); *United States v. Mallory,* 460 F.2d 243 (10th Cir. 1972), *cert. denied,* 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); *Baker v. United States,* 329 F.2d 786 (10th Cir. 1964), *cert. denied,* 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56 (1964). On appeal, error is not to be presumed and the burden of demonstrating prejudicial error is on the appellant. *Gardner v. California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d

601 (1969); Fed.Rules Cr.Proc. rule 52(a), 18 U.S.C.A.

The pre-trial motions to sever made by Davis and Linda were directed to prejudice they were concerned of by reasons of statements given by "co-defendants" to law enforcement officers and, in addition, in Linda's case, by her reliance on the testimony of co-defendants Larry and Davis, whom she intended "to call." The trial court was at no time apprised by any party before trial that any defendant intended to voluntarily testify in his or her behalf. In relation to Linda's desire to "call" the co-defendants as witnesses on her behalf, it is fundamental that neither Davis or Larry could be compelled to give testimony in violation of their Fifth Amendment privilege in a joint trial that could be compelled had Linda been tried separately.

### (c)

Without apparent notice to her co-defendants and without prior knowledge on the part of the trial court, Linda elected to testify in her own behalf during the trial. Linda testified that she and Davis had lived together for some time and that Davis is the father of her son; that Larry is her brother; and that she had never written or falsified any of the checks involved. She stated that Larry had delivered certain of the checks to her place of residence and that after he laid them on a table she ". . . opened them up and looked at them." [R., Vol. II, pp. 256, 257.] She denied having received any money from Larry "for him cashing these checks." [R., Vol. II, p. 259.] She was cross-examined by counsel for Larry and Davis.

■ When Linda elected to testify, neither counsel for Davis or Larry Walton moved for an *in camera* hearing which may have successfully probed the possibility or likelihood that Linda intended to place the "blame" or fault on her co-defendants or either of them. Each of the defendants was represented by independent counsel. At oral argument, the Federal Public Defender for the District of Kansas, who appeared at trial as counsel for Davis, stated that it was the policy of his office to represent only one co-defendant in any joint trial. It is apparent from this record that there was little or no correlation or communication between defense counsel. We do not direct this observation as a *per se* criticism of defense counsel. There may very well have existed antagonisms and/or distrusts which justifiably explained lack of communication or cooperation. Generally, however, where the evidence of aiding and abetting is strong—and it is in this case—the co-defendants may be expected to pursue a common defense. We believe that the trial court may properly presume cooperation between defense counsel. If there is a situation involving lack of cooperation between counsel, defense counsel has the burden to inform the trial court.

■ Counsel for Davis and Larry did not move for severance at the commencement of or during the testimony of Linda. Furthermore, no motions to strike or for mistrial were made. Under the totality of these circumstances, we hold that when Linda voluntarily took the witness stand and implicated her brother, Larry, in some critical aspects of the government's evidence relative to the checks, the trial court was not obligated, *ipso facto,* to order severance. Abuse of sound discretion is not supported by this record. We agree with this language from *Rhone v. United States,* 125 U.S.App.D.C. 47, 365 F.2d 980 (1966):

> Here, Wilson claims he was prejudiced by the fact that his codefendant testified while he did not, thereby emphasizing to the jury his failure to take the stand on self-incrimination grounds beyond the repair of any instructions. *At no time before or during the trial, however, did Wilson argue to the court that severance should be granted because Rhone's testimony would present Wilson with the trilemma of adopting it, disputing it, or remaining silent rather than make this choice.* (Emphasis supplied.)
> 365 F.2d, at 981.

In *Rhone, supra,* the court recognized the wide variety of circumstances that prejudice may result from in relation to joinder

of defendants, i. e.: where one defendant makes an inculpatory statement inadmissible against a co-defendant [*Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954)]; where defendants present conflicting and irreconcilable defenses and there is a danger the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty; and where one defendant testifies and urges the jury to draw an adverse inference from his co-defendant's silence.

■ In order to overcome the discretion of the trial court in granting or refusing a motion for severance, a party must demonstrate an abuse thereof working to his prejudice denying him a fair trial. *Sullins v. United States*, 389 F.2d 985 (10th Cir. 1968). There was no abuse of discretion and no demonstrated prejudice under the circumstances presented here. Neither Davis or Larry moved for an *in camera* hearing at the commencement of Linda's testimony in order to ascertain whether her testimony would implicate or incriminate them or alert the trial court thereto. Furthermore, neither moved to quash or for mistrial. Under these circumstances, prejudicial error cannot be charged to the trial court.

In *United States v. Fersner*, 416 F.2d 403 (4th Cir. 1969), *cert. denied*, 397 U.S. 954, 90 S.Ct. 982, 25 L.Ed.2d 137 (1970), the court ruled that because a co-defendant who testified was available for cross-examination by counsel for the defendant, there was no denial of discretion by the trial court in denying a motion for severance.

A very thorough discussion of problems inherent in joinder of causes and parties is set forth in *United States v. Branker*, 395 F.2d 881 (2nd Cir. 1968), *cert. denied*, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969). There eight defendants were jointly tried on various offenses on an 81 count indictment arising out of fraudulent schemes to avoid payment of income taxes and to obtain tax refunds to which the recipients were not entitled. The first count charged a conspiracy among all defendants. The other counts charged substantive offenses involving defendants both

singly and in various combinations. At the close of the government's case, the trial judge dismissed the conspiracy count and eighteen substantive counts as to all defendants, and five counts as to certain of the defendants. The government's case-in-chief consumed five weeks. Appellants' principal contention on appeal was that their motions for separate trial should have been granted after the conspiracy count was dismissed. After detailing the evidence in relation to each of the appellants and the prejudicial effect of joinder arising out of the conspiracy count, the appellate court held that while two of the appellants had not been prejudiced by the joinder, six of them had been. The Court said:

. . . While it is true that this court has on several occasions sustained convictions on substantive counts after dismissal of a conspiracy count relied upon to justify joinder [cases cited], we are not aware of any such case in which the number of counts even approached the number involved here. It is obvious that as the number of counts is increased, the record becomes more complex and it is more difficult for a juror to keep the various charges against the several defendants and the testimony as to each of them separate in his mind. [cases cited]

. . .

This kind of prejudice is particularly injurious to defendants who are charged in only a few of the many counts, who are involved in only a small proportion of the evidence, and who are linked with only one or two of their co-defendants.

. . .

. . . the conspiracy count provided the only justification for the joinder

. . .

. . . the risk of prejudice [by reason of the joinder] was so great that 'no amount of cautionary instructions could have undone the harm.' . . .

395 F.2d, at 887–889.

We submit that in the instant case there is no demonstrable prejudice when measured by that found to exist in *Branker*, *supra*. Prior to Linda's testimony implicat-

ing Larry, i. e., that he had delivered certain checks to her apartment, etc., there was *independent* evidence presented by the Government, in its case-in-chief that (a) Larry had voluntarily confessed to the theft of certain of the subject checks and (b) that Larry's prints were identified on certain of the checks admitted in evidence. The trial court carefully and meticulously instructed the jury at the close of all evidence, including (a) an instruction that the testimony of a defendant who does testify is to be judged in the same manner as that of another witness and (b) that each defendant is entitled to have his case determined from evidence as to his own acts, statements and conduct leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants, and (c) that the testimony of any accomplice should be received with caution and weighed with great care.

██ The trial judge has "a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In all such cases, the trial court must weigh prejudice to a defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration. We believe that a trial judge cannot be held to have abused his discretion relative to refusal to grant a severance under circumstances whereby defense counsel do not inform or alert the judge in sufficient time that steps to avoid prejudice may be considered.

██ We hold that in the instant case there is every reason to believe that the jury was able to separate the evidence relevant to each defendant and to follow the court's instructions so as to render a fair and impartial verdict as to each. *Opper v. United States, supra; Lowther v. United States*, 455 F.2d 657 (10th Cir. 1972), *cert. denied*, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972). The testimony of Linda implicating Larry, relative to delivery of certain checks to her apartment, when considered in balance, had little potential for prejudice to him when compared by the weight of the Government's evidence already admitted establishing his guilt. And, significantly, Linda was strenuously cross-examined by counsel for Davis and Larry. There is no showing that Larry was denied his substantial rights by failure to sever. *McGee v. United States*, 402 F.2d 434 (10th Cir. 1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969).

### (d)

██ Davis and Larry contend that plain error was committed when counsel for Linda commented upon their failure to testify during his closing argument. Counsel said:

Finally, and these are my concluding remarks, *Linda Walton was the only one who took the stand and told you her story*, and you could see it from the stand, she talked to you, she was very honest with you, and I think that should weigh heavily on your mind, *that she was the only one who was willing to tell you from her mouth what had happened.* (Emphasis supplied.)

R., Vol. II, p. 331.

*Sanchez v. Heggie*, 531 F.2d 964 (10th Cir. 1976), *cert. denied*, 429 U.S. 849, 97 S.Ct. 135, 50 L.Ed.2d 122, involved an improper comment in closing argument by the prosecutor relative to the failure of the habeas petitioner to testify in the course of his prosecution for murder and rape in a state proceeding. We there recognized the rule in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) that any comment on a defendant's failure to testify violates his Fifth Amendment privilege against self-incrimination. *Knowles v. United States*, 224 F.2d 168 (10th Cir. 1955) states the test followed by this court in determining whether a comment will be considered a reference to a defendant's failure to testify:

. . . The test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

224 F.2d, at 170.

In *Sanchez v. Heggie, supra,* the prosecutor, in making reference to where the rape and murder specifically occurred noted that Jayne, the deceased victim, had admitted Sanchez into her apartment. The prosecutor then remarked, "I am sure [that] she went to that door agreeably. I don't know, and really none of us know, *other than Carlos (Sanchez), where this actual murder and rape took place.*" The trial court construed this remark as a comment on Sanchez's failure to testify. In reversing, we observed that the remarks could be construed two ways. Noting that the defense counsel had called the jury's attention to the circumstantial evidence instruction which states that evidence in such a case must be inconsistent with any reasonable hypothesis of innocence, we reasoned that the prosecutor's remarks were generated by the defense counsel's arguments and that in such a case the opposing advocate must be provided considerable latitude in responding. We reasoned that the prosecutor's remarks more properly meant that "Carlos (Sanchez) knows because he is guilty" rather than "Carlos knows and he should have told us about it."

In *United States v. Bishop,* 534 F.2d 214 (10th Cir. 1976) we held that a prosecutor's remarks that the Government's evidence was "uncontradicted" could not be said to have had the effect only of inviting the jury's attention to the fact that defendant had not testified. We held that the prosecutor's remark was not manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the defendant to testify. Significantly, we stated that a conviction should not be disturbed simply on the predicate that a prosecutor's remark *might* be construed or interpreted as one referring to an accused's election not to testify.

In *United States v. Blanton,* 531 F.2d 442 (10th Cir. 1975), U.S. rehearing denied, three persons were jointly charged as aiders and abettors under 18 U.S.C.A. § 2 of unlawful copying of certain copyrighted sound recordings. One of the co-defendants testified. In his closing argument for *Blanton,* his counsel stated that his client had relied upon a co-defendant's statement that everything was "above board." No testimony to this effect had been elicited or admitted. The prosecutor, in rejoinder, simply observed that there was no evidence to support that statement. We held that such is not improper comment concerning *Blanton's* failure to testify.

And in *United States v. Larsen,* 525 F.2d 444 (10th Cir. 1975), *cert. denied,* 423 U.S. 1075, 96 S.Ct. 859, 47 L.Ed.2d 85 (1976), we held that these remarks by the prosecutor (following testimony by the defendant) did not constitute expressions of the prosecutor's personal belief in the defendant's guilt but were directed to the issue of credibility: "I suggest to you, gentlemen of the jury, the defendant in this case would have absolutely no reservation whatsoever, from taking that stand and saying whatever he felt was necessary to get acquitted of this charge."

We hold that the comments made by Linda's counsel in closing argument cannot be construed to have been manifestly intended or of such character that the jury would naturally and necessarily take them to constitute comments on the failure of the co-defendants to testify. These comments more accurately describe counsel's conviction that Linda's credibility is unchallenged and that her testimony was truthful. The trial court exercised an abundance of care in meticulously instructing the jury that it was not in anywise to consider the failure of Davis and Larry to testify. It is significant, we believe, that neither Davis nor Larry lodged an objection to the remarks of Linda's counsel here complained of for the first time, nor did either move for mistrial.

## II.

It is contended that the trial court committed prejudicial error in unduly limiting the scope of cross-examination of the Government's key witness, Nehemiah Smith, Jr.

We first observe that each of the three attorneys for the co-defendants extensively cross-examined Smith. A considerable amount of the cross-examination was repetitive. The trial court allowed defense counsel great latitude. Smith was extensively cross-examined with regard to his direct testimony in terms of inconsistencies and with regard to his credibility in terms of his motive for testifying on behalf of the Government in light of his own involvement in the substantive charges. The trial judge even permitted defense counsel to venture into: interrogation relating to Smith's prior arrests which did not result in convictions; incarcerated time he had spent; and, inquiry relative to details of certain convictions imposed on Smith and plea bargaining matters. Our review of this record impresses us that this claimed error is spurious and without merit. The so-called "limitations" upon the scope of the cross-examination of Smith are without substance.

The trial court did not err in refusing defense interrogations of Smith relative (a) to his knowledge concerning the *maximum penalty* relative to the offense of interstate transportation of stolen securities, (b) details of his participation in the forging transactions charged predicated on other forgery activities, after Smith had testified that he had previously forged some forty checks, even though he had been charged with but two such offenses, and (c) whether Smith's motive for pleading guilty to the identical substantive offense charged against the three co-defendants was that of saving some extra prison time.

The right of cross-examination is fundamental. *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). However, any reversal of a conviction on the basis of undue limitation upon cross-examination must demonstrate a denial of a due process right of confrontation as guaranteed in the Sixth Amendment [*Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)], or an abuse of discretion by the trial court in limiting cross-examination.

*United States v. Jorgenson*, 451 F.2d 516 (10th Cir. 1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972). The exercise of discretion by the trial court will not be upset unless it is determined to be clearly prejudicial. *Whitlock v. United States*, 429 F.2d 942 (10th Cir. 1970).

We hold that the record before us does not reveal any prejudicial restriction of cross-examination of Smith. The restrictions imposed were proper in order to avoid repetition or to prevent irrelevant or immaterial matters from entering the case. The trial court was generous in its allowance of a wide scope of cross-examination to the appellants.

### III.

It is alleged that the trial court erred in admitting evidence against the defendants of other alleged crimes which were not charged in the information.

The Government, in its in-chief case, introduced a check, admitted as Exhibit 6, over objection, which Smith testified he had cashed after he had received it from Davis and after it had been filled out by Linda. This check was drawn on a different account than those charged in the information and it bore different payor and payee names than those charged.

The trial court admitted the testimony and the check with a cautionary instruction to the jury that it was admitted solely to "show a common scheme, design or intent, if in fact that evidence conveys that effect to the jury." Complaint is likewise made that Larry was "extremely prejudiced" by comments of an FBI agent regarding another crime allegedly committed by Larry when he drove to Columbia, Missouri, where he admittedly stole some checks drawn on Automated Professional Management, Inc. Objection was lodged and motion for mistrial requested, both of which were denied.

The general rule is that evidence of criminal activities other than those charged in the indictment or information are not admissible. An exception, however, applies if the evidence establishes a course

of conduct, scheme, design or intent which occurred in close proximity of time to the principal charges and which relates in identity thereto. These criteria are met in the instant case. *United States v. Beathune,* 527 F.2d 696 (10th Cir. 1975), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821; *United States v. Pauldino,* 443 F.2d 1108 (10th Cir. 1971), *cert. denied,* 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971). *United States v. Burkhart,* 458 F.2d 201 (10th Cir. 1971) does not come into play here, in view of the fact that the prior convictions there involved were held to have occurred many years before the charged offense and hence were too remote to have substantive value in establishing the criteria for the exception. The transactions here testified to certainly establish a course of conduct associated directly to the crimes charged in the information and they relate closely in point of time. Furthermore, the trial court carefully instructed the jury regarding the use to be made of this evidence in that each defendant was to be given separate, personal consideration insofar as the evidence is concerned and that each defendant is entitled to have "his or her case determined from evidence as to his or her own acts and statements and conduct . . ." [R., Vol. II, p. 351.].

### IV.

It is contended that prejudicial error occurred when the trial court did not grant Larry's motion for mistrial when the FBI agent testified that he had interviewed Larry while he was "in jail on another matter."

The Government attorney was interrogating FBI Agent McGinty with respect to interviews he had with Larry. The colloquy leading to the statement is:

Q. Would you explain to us what that conversation was, please.

A. He was in jail on another matter

. . .

[R., Vol. I, p. 198.]

The answer was interrupted by motion made by Larry for mistrial on the ground that the statement was prejudicial. The

motion was denied and thereupon the trial court instructed the jury to disregard the statement of the agent in that it was irrelevant to any issue in the case and further that a person can never be convicted of one crime by evidence that he may have been in custody or under investigation for something else.

In *Tapia v. Rodriquez,* 446 F.2d 410 (10th Cir. 1971), testimony was admitted that the defendant was identified from a police display of a "mug book" containing photographs of persons suspected in the county of " . . . burglary, armed robbery, narcotics addicts." We held that while the "mug book" remarks were improper they did not constitute plain or fundamental error within the purview of Fed.Rules Cr. Proc. rule 52(b), and that in determining whether the plain error rule should be invoked the appellate court must consider the whole record. *See also: Adams v. United States,* 375 F.2d 635 (10th Cir. 1967), *cert. denied,* 389 U.S. 880, 88 S.Ct. 117, 19 L.Ed.2d 173 (1967).

In *United States v. Woodring,* 446 F.2d 733 (10th Cir. 1971), we held that the testimony of an FBI agent that when he arrested the defendant he informed him of the nature of the federal charge against him and that he had a warrant for his arrest for that charge and another warrant for his arrest for a charge emanating from the state of Utah was not prejudicial inasmuch as it was inadvertently made.

In *United States v. Bynum,* 485 F.2d 490 (2nd Cir. 1973), the court held that a government witness' testimony that one of the co-conspirators was in jail for several months did not provide basis for reversal of judgment of conviction where the trial court, as here, promptly admonished the jury to disregard the remark. We agree with this ruling. In *United States v. Van Scoy,* 482 F.2d 347 (10th Cir. 1973), we held that remarks in the Government's opening statement that the defendant and one Johnson, who had been jointly charged, "were inmates in the Oklahoma State Penitentiary" prior to the commission of the crime charged was not reversible error, even

though we recognized that the statement was an improper introduction of a prison record. Furthermore, in view of the strong evidence of guilt reflected in this record against each of the co-defendants, the ". . . statement could not have had any appreciable effect on the action of the jury and did not affect any substantial right of the accused." *United States v. Woodring, supra,* at 737; *Bruner v. United States,* 432 F.2d 931 (10th Cir. 1970).

## V.

Larry alleges trial court error in failing to permit him to call as a rebuttal witness FBI Agent Paladino.

Following the Government's in-chief case, Davis presented one defense witness, FBI Agent McGinty and rested. Larry did not call any witnesses and rested. Linda then testified in her own behalf. In the course of her testimony, Linda referred to a prior interview she had with FBI Agent Paladino. As a result, counsel for Larry moved to call FBI Agent Paladino in order to rebut Linda's testimony that (a) she had touched the checks allegedly delivered to her apartment by Larry, (b) she had denied traveling to Columbia, Missouri, and (c) she was not asked any questions about Larry.

FBI Agent Paladino had prepared a report following an interview he held with Linda on April 23, 1975. On cross-examination of Linda, the report was referred to and counsel pointed out the inconsistencies between Linda's testimony and certain statements attributed to her in her prior interview with Agent Paladino. Both the Government and counsel for Larry requested that Agent Paladino be called for rebuttal testimony. The request was denied and the trial court thereupon instructed the jury to "disregard all of the testimony and the questions relative to the alleged statement made [by Linda Walton] to Detective Paladino insofar as what you have heard here a moment ago. Much of it was hearsay as to some defendants. It reflects that the agent doesn't take the question and answer form; he writes a narrative form on what he thinks is important, and it is cer-

tainly not germane. So, I'm directing the jury to disregard the evidence relating to the questions asked this witness . . . It [the interview] doesn't reflect on Agent Paladino's credibility or her's, or anybody else's. Or, Larry Walton or any defendant . . . It is just not proper evidence . . . ." [R. Vol. 2 of 2, pp. 283, 284.].

■■■■■ Some testimony of Linda was inconsistent with that of Agent Paladino but it basically related to collateral matters. That fact was obvious to the jury. Counsel for Larry, we believe, made that much clear in the course of his cross-examination of Linda. Accordingly, insofar as the record reflects, any rebuttal testimony by FBI Agent Paladino would simply have been in the nature of "firming up," so to speak, his direct testimony offered in the Government's case-in-chief which may have conflicted with that of Linda. The admission of rebuttal evidence lies within the sound discretion of the trial court and an appellate court will not interfere except in cases of clear abuse of discretion. *United States v. Pennett,* 496 F.2d 293 (10th Cir. 1974); *Hoffman v. United States,* 68 F.2d 101 (10th Cir. 1933). No such abuse of discretion occurred here.

## VI.

Finally, the appellants contend that the trial court erred in denying their motions for judgment of acquittal, both at the conclusion of the Government's evidence and at the conclusion of all of the evidence.

Such motions were granted as to Davis and Linda as to Counts 3 and 5.

■■■■■ It is fundamental that the appellate court does not weigh conflicting evidence or pass on the credibility of witnesses. *United States v. Downen,* 496 F.2d 314 (10th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). In passing on a motion for acquittal, the court must scrutinize the evidence, together with all reasonable inferences to be drawn therefrom, from the point of view most favorable to the government to determine whether there is substantial evidence from which a jury might reasonably find that an

accused is guilty beyond a reasonable doubt. *Lowther v. United States, supra; United States v. Harris,* 441 F.2d 1333 (10th Cir. 1971).

We hold that the trial court did not err in failing to grant the motions for acquittal. There is substantial evidence in this record to support the jury verdicts.

WE AFFIRM.