972 F.2d 357
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Troy T. COLEMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Byron W. MATTHEWS, Defendant-Appellant.
 Nos. 90-5158, 90-5165.
 United States Court of Appeals, Tenth Circuit.
 July 28, 1992.
 
 1
 Before McKAY, Chief Judge, SETH, Senior Circuit Judge, and FINESILVER,* Chief District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 SHERMAN G. FINESILVER, Chief District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of the appeal of United States of America v. Byron W. Matthews, No. 90-5165. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. That case is therefore ordered submitted without oral argument. Oral argument was held in the appeal of United States of America v. Troy T. Coleman, No. 90-5158.
 
 I.
 
 5
 These are criminal appeals from the United States District Court for the Northern District of Oklahoma. Codefendants Troy T. Coleman ("Coleman") and Byron W. Matthews ("Matthews") were both indicted on April 5, 1990, for violating 18 U.S.C. § 1513(a)(1), Retaliating against a witness, victim or an informant. The case was tried on May 23, 1990, and May 24, 1990, and both Coleman and Matthews were convicted by a jury verdict.
 
 
 6
 Coleman was sentenced on July 13, 1990, to serve a term of sixty months incarceration in the custody of the U.S. Bureau of Prisons, and a term of supervised release of three years. In addition, Coleman was directed to pay restitution in the amount of $193.63.
 
 
 7
 Matthews was sentenced on July 13, 1990, to serve a term of seventy months incarceration in the custody of the U.S. Bureau of Prisons. The sentence was to be served concurrently with a sentence imposed in a related case in the Northern District of Oklahoma. Matthews was also sentenced to a term of supervised release of three years and was directed to pay restitution in the amount of $193.63.
 
 II.
 
 8
 This case presents two issues. The first, raised by both Coleman and Matthews, is whether the evidence produced by the government is sufficient to support the guilty verdict reached by the jury. The second, raised only by Coleman, is whether he was properly sentenced under the United States Sentencing Commission Guidelines. We AFFIRM the convictions of both Defendants.
 
 
 9
 Coleman and Matthews allegedly beat Bernard Saunders ("Saunders") on March 27, 1990, because he testified against them in a federal criminal cocaine trial. At approximately 6:00 p.m. on March 27, 1990, Coleman and Matthews returned from the federal courtroom to the Tulsa City Jail, where they were detained in the cocaine case. They were sitting on a bench waiting to change into their jail clothes and return to their cells when the alleged physical beating of Saunders occurred.
 
 
 10
 Saunders was also an inmate in the Tulsa City Jail and was awaiting sentencing in Oklahoma state court on his conviction for possession of a controlled substance and grand larceny. Saunders was a jail trustee and as such had the liberty to move about the jail floor performing his laundry duties.
 
 
 11
 At trial, Saunders testified that he was in the trustee area of the jail when Coleman and Matthews beat him in the head and face with their fists. Saunders then testified that Coleman and Matthews threw him against cell bars and then against an iron bed railing, where he gashed his head and bled profusely.
 
 
 12
 Coleman and Matthews denied attacking Saunders. Roderick Howard, another federal inmate, testified that he, too, had just returned from federal court with Coleman and Matthews during the alleged beating incident and that neither of them left the bench during that time.
 
 
 13
 Jail Officers Preston Null, Billy Joe Marlar, and Ricardo Aguilar each testified that he was on duty at the time of the incident but did not see it. Each officer also testified that he examined Coleman and Matthews for blood stains on their clothes and for cuts and bruises on their hands and found neither. Sergeant Null also testified that when Saunders came bleeding down the corridor, he saw him from his desk in the administrative office, stepped right out to assist him, and saw Coleman and Matthews sitting on the bench with neither showing any signs of physical exertion.
 
 
 14
 On May 24, 1990, the jury returned a guilty verdict with respect to both Coleman and Matthews. On May 31, 1990, Coleman filed a motion for judgment N.O.V., which the court denied.
 
 III.
 
 15
 Coleman and Matthews both contend that the evidence is insufficient to support the guilty verdict for the following reasons: no jail officers or inmates testified that they saw the alleged beating; no blood was found on Appellants' clothes; Appellants did not have skinned hands; Appellants were not breathing heavily when they were inspected by jail officers immediately after the alleged incident; and Appellants' witness, Roderick Howard, stated that he was with Matthews and Coleman on the bench at all times during the time of the alleged beating and that he saw Saunders walking toward them with blood dripping all over the place.
 
 
 16
 The government notes that Saunders testified to the facts of the incident and that his testimony was supported by the testimony of Sergeant Null, who observed his beaten and bloodied condition immediately after the attack occurred. The government also notes that Sergeant Null testified that it is not unusual for inmates to deliberately fail to see or be willing to testify as to events that occurred in their presence. Finally, the government claims that it certainly would be possible for two men to repeatedly sling the head of a third into a bed rail or jail bars and still remain free of bloodstains.
 
 IV.
 
 17
 The first issue in Coleman is identical to the only issue in Matthews. The issue is whether the evidence is sufficient to support a guilty verdict.
 
 
 18
 An appellate court does not weigh conflicting evidence or pass on the credibility of witnesses. United States v. Downen, 496 F.2d 314 (10th Cir.), cert. denied, 419 U.S. 897 (1974). In examining a motion for judgment of acquittal, N.O.V., an appellate court must scrutinize the evidence from the point of view most favorable to the government to determine whether there is substantial evidence from which a jury might reasonably find that an accused is guilty beyond a reasonable doubt. United States v. Walton, 552 F.2d 1354, 1357 (10th Cir.1977).
 
 
 19
 In applying these principles to the instant case, we conclude that the district court was correct in allowing the jury to decide the issues presented. These were factual questions to be determined by the jury. In essence, Coleman and Matthews argue that this Court should reverse because the jury should have believed their witnesses and not the government's witnesses. This Court does not judge the credibility of witnesses appearing in the trial before the district court.
 
 V.
 
 20
 The second issue, raised only by Coleman, is whether he was properly sentenced under the United States Sentencing Commission Guidelines. Coleman contends that the trial court erred in rejecting his plea for downward departure. Coleman argues that the court, when sentencing him, should have considered that on July 12, 1990, several weeks after trial, United States Secretary of Education Lauro Cavazos launched a new model curriculum on preventing drug use by students in the nation's 122,000 public and private schools. Coleman contends that the court should have considered this in light of the fact that he was a juvenile drug and alcohol abuser.
 
 
 21
 Coleman recognizes that his juvenile drug problem is not ordinarily relevant in determining whether a sentence should be outside the guidelines. But he contends that the United States, by assuming greater responsibility for drug free education, has made it relevant.
 
 
 22
 Coleman further asserts that his juvenile drug problem is a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp.1991).
 
 
 23
 The government contends that the district court correctly applied the sentencing guidelines to Coleman's base offense level and criminal history and that the sentence imposed was proper.
 
 VI.
 
 24
 Coleman's argument, that the district court should have taken into account the United States Secretary of Education's new model program when sentencing Coleman, is without merit.
 
 
 25
 Coleman asserts that this Court should reduce his sentence because of his juvenile drug problem. However, Coleman cites no cases in which a similar downward departure was granted. Moreover, Section 5H1.4 of the United States Sentencing Guidelines (Nov. 1990) clearly provides: "Drug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines."
 
 
 26
 We have carefully considered the arguments advanced by Defendants and find them to be without merit. Accordingly, the judgments of the United States District Court for the Northern District of Oklahoma on all issues are AFFIRMED.
 
 
 
 *
 The Honorable Sherman G. Finesilver, Chief United States District Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3